(No. 30844.—

WILLIAM E. SADDLER, Appellant, *vs.* THE NATIONAL BANK OF BLOOMINGTON, Appellee.

*Opinion filed January 19, 1949—Rehearing denied May 11, 1949.*

WILSON, THOMPSON, and CRAMPTON, JJ., dissenting.

BRANSON WRIGHT, of Bloomington, for appellant.

CASSIDY, SLOAN & CRUTCHER, of Peoria, and COSTIGAN, WOLLRAB & YODER, of Bloomington, for appellee.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Appellant, William E. Saddler, filed suit December 11, 1945, against appellee, The National Bank of Bloomington, a corporation, to recover the value of certain articles alleged to have been taken from his safety-deposit box in said bank by his wife and appropriated to her use, when she had no authority to enter the box. Trial before a jury resulted in a verdict May 29, 1947, in favor of appellee. Motions for judgment *non obstante veredicto* or in the alternative for a new trial were filed by appellant June 5, 1947, and on the same day judgment was entered that appellant take nothing by his suit and that appellee go hence without day and that appellant pay the costs. Thereafter, on June 20, 1947, the court denied both motions. Appeal was taken to the Appellate Court which affirmed the judgment and we have allowed an appeal to this court.

The complaint as amended charges in substance that appellant leased, September 30, 1941, a safety-deposit box from appellee, said leasing being evidenced by an instrument in writing prepared and furnished by appellee, executed by appellant as lessee and by the bank through Nellie G. Roberts, custodian; that said instrument remained in force as a written contract between the parties until October 5, 1942, when another contract of the same form was entered into between them and in which latter contract appellant's sister, Ada Saddler, was named his deputy to have full and absolute control over the box. This contract, plaintiff's (appellant's) exhibit B, and the former one, plaintiff's (appellant's) exhibit A were made a part of the complaint. Following is a copy of said exhibit B, both front and back:

RENTAL $ ....2.50....
PER YEAR

## SAFE DEPOSIT VAULTS

BOX NO. 1081

# THE NATIONAL BANK OF BLOOMINGTON

Bloomington, Illinois, .........Oct. 5......... 19 42

Received from ....Mr. or Mrs. Wm. E. Saddler....

Gov't Tax $ ....50.... Rent to ................ $ ....2.50.... Total $ ....3.00....for rent
of a safe in the vault of this bank.

The lessor, in consideration of the foregoing rental, the receipt of one annual installment of which is hereby acknowledged, by these presents leases to the undersigned lessee, its safe deposit box bearing the above number, for period of one year from the date hereof, renewable in subsequent terms of one year each, upon the same general terms, conditions and agreements as are herein contained, and in event that a renewal lease, in writing, shall not be executed and delivered, then this instrument shall of itself operate as, and be held to be a renewal or successive renewals hereof, subject to the right of cancellation as herein contained.

Lessor and lessee covenant and agree to and with each other that said box and said space is leased subject to the terms, conditions, agreements, rules and regulations as herein contained

## THE NATIONAL BANK OF BLOOMINGTON, BLOOMINGTON, ILL.

Nellie G. Roberts Custodian

BY....................................
Wm. E. Saddler Lessee

.................................Lessee

402 E. Front St.
STREET                          CITY                          STATE

............................................

Date...........................

I hereby certify that all of the property stored in Box No............covered by this contract has been safely withdrawn and the box is hereby surrendered.

.................................Lessee

Keys given to and box
found empty by.................................For the Bank

The conditions printed on the reverse side constitute a part of this contract.

Oct. 5....19....42.... I do ....HEREBY DESIGNATE

AND APPOINT....Ada Saddler....

AS ....my.... DEPUTY AND AGENT, TO HAVE ACCESS TO THE BOX COVERED BY THIS CONTRACT, TO TAKE AND REMOVE FROM OR ADD TO THE CONTENTS THEREOF, AND HAVE FULL AND ABSOLUTE CONTROL OVER THE SAME, HEREBY WAIVING ANY LIABILITY OF THE LESSOR, ARISING OUT OF THE EXERCISE BY THE SAID DEPUTY, OF ANY OF THE POWERS HEREIN CONTAINED

Wm. E. Saddler
LESSEE

Ada Saddler
LESSEE

1202 E. Oakland Ave. DEPUTY
ADDRESS OF DEPUTY

# RULES
## GOVERNING SAFE DEPOSIT BOXES

1. Lessor reserves the right to cancel any lease after ten days' notice by mail to the address on its records and the return of the unearned rental for the unexpired term of the lease.

2. Papers must not be examined within the vault, but in rooms which the lessor shall provide for that purpose. Lessee himself must remove and replace his box. Should an attendant handle the box as an accommodation to the lessee, lessor assumes no liability therefor.

3. Lessor shall under no circumstances, except as provided in paragraph 9, be considered as bailee or otherwise howsoever in control or possession of the contents of the leased box, the relation of the lessor and lessee, under this agreement, being that solely of landlord and tenant.

4. The vaults may be wholly closed upon any national, state or city holiday, or upon any other day when, on account of mo bs unusual crowds, closing of Clearing House Association, acts of God, or for any other reason said lessor shall deem such closing prudent and proper, and the lessor shall have the exclusive right to fix the hours for opening and closing the same, and said hours may by it be changed from time to time.

5. If by any act, writ, decree or process of any court against any person having right of access to a box the lessor is forbidden to allow the box to be opened by such person, the box may be closed to every one, until such act, writ, decree or process be annulled. The lessor may refuse access to the box at any time until all charges connected with the box have been paid.

6. Lessor will retain no keys which will open any leased box, and upon the surrender of said box, the keys thereto must be returned immediately. Any expense incurred by the lessor in opening or repairing said box, or the doors enclosing the same, or in changing the locks thereon, occasioned by the loss of a key or keys or by failure to deliver the same at the time of cancellation or surrender, must be paid by the lessee. Lessee must notify lessor at once if a key is lost.

7. Lessee shall give the lessor his signature and that of his agent or deputy, should he appoint any, and such signature shall be conclusive evidence of the lessee's knowledge of and assent to the rules and regulations, and this shall, without repetition, apply to all renewals and subsequent leases of boxes from lessor to lessee.

8. The liability of lessor in respect to property deposited in said box is limited to ordinary care in the performance by employees and officers of lessor of their duties, and shall consist only of (a) keeping the box in the vault where located when this rental contract is entered into, or in one of equal specifications, the door to which box shall be locked at all times except when an officer or an employee is present, (b) allowing no person access to said box, except lessee or authorized deputy or attorney-in-fact having special power to act, identification by signature being sufficient, or his legal representative in the case of death, insolvency or other disability of lessee except as herein expressly stipulated. An unauthorized opening shall not be presumed or inferred from proof of partial or total loss of contents.

9. All rentals of boxes shall be payable in advance, and if possession of the box rented is not given up and its keys returned to lessor at the date of cancellation or surrender of the box at the expiration of this lease, or of its renewal, then this lessee shall be and remain a tenant at sufferance, and lessee shall not be permitted access to said box but may be debarred therefrom at any time at the option of the lessor; and after ten days' notice to lessee by mail to his or her place of residence or business, as given by lessee on the books of lessor, lessor shall have the right to forcibly open such box and the door thereto, at the expense of lessee, and in the presence of any two of its officers or employees whom the President may select, and if the contents thereof shall prove of sufficient value, in the estimation of these witnesses the lessor shall take charge of such contents as a special deposit, subject to the payment of all rentals that may have accrued, and subject to its rules, regulations and charges as to special deposit; if the contents shall be thus estimated not of sufficient value for deposit, lessor shall have the right to remove them from said box and shall make such disposition thereof as lessor may deem proper without further liability.

10. Lessor shall not be liable for any delay caused by failure of the vault doors or locks to operate.

11. Lessee shall not use said box, or permit the same to be used, for the deposit of any intoxicating liquors, narcotics or any property of an explosive or destructive nature.

12. This contract is personal to the lessee and shall not be assigned or transferred, and any assignment or transfer thereof shall immediately terminate it.

13. Lessee hereby acknowledges the receipt of two keys to said box and space.

14. Lessor shall be immediately notified in writing of any change of address of lessee, and in the absence of any notice in writing, notice forwarded to the address given by lessee at the time of making this contract shall be sufficient for all purposes.

15. Neither the lessor nor any officer or employee thereof, in his private or official capacity, shall be authorized to act as deputy or agent for the lessee in respect to any matter or thing connected with said box.

16. Lessor reserves the right to make such other and further reasonable rules and regulations, without notice, as may from time to time be needful for the safety, care and cleanliness of the premises and for the preservation of good order therein

The complaint further alleges that on the day said exhibit B was executed both appellant and his sister placed and left valuable property in the rented box, numbered 1081; that appellant at no time authorized appellee to admit Elma Saddler, his wife, to said box or to permit her to have access thereto, nor did he at any time authorize his wife to enter the box; that during 1943 appellant was inducted into the armed forces and thereafter, August 20, 1943, his wife was permitted by appellee to enter his box and to place her name on said exhibit B as a lessee without his knowledge and authority and without the knowledge and authority of his deputy, and she thereafter entered the box at will with the aid and assistance of the servants of appellee, all without appellant's knowledge; that April 19, 1944, was the last time appellant entered his box and that he then left in it United States currency in the amount of $4000 and appellee's cashier's check for $1000, three $1000 United States government war bonds, E series, and four $500 United States government war bonds, E series; that said war bonds were payable to appellant or his wife but were paid for and were owned by appellant and cost him $3750; that upon his return from foreign service he discovered that the aforesaid bonds and currency had been extracted from the box, whereupon he notified appellee and was informed by it that his wife had had access to said box and to inquire of her what she had done with the property; that his wife had, without his knowledge or consent, converted said bonds into cash and had dissipated and squandered the proceeds together with the $4000 in currency, and the property was lost to him, she being wholly insolvent; that demand was made of appellee for the return of the identical property or its equivalent in money, which was refused and that by reason of appellee's failure to keep and perform its contract with him he had been damaged in the sum of $7750 plus interest from November 19, 1945.

Appellee answered the complaint March 11, 1947, admitting the execution of the contracts, but denied that valuable property was placed in the box; denied that appellant had never authorized appellee to admit his wife to the box or to permit her to have access thereto; denied that he never informed his wife that he had leased the safety-deposit box from appellee and that he never authorized her to enter the box; denied that his wife presented herself with a key to the custodian of the vault in the absence of appellant and his deputy and without authority from either; denied that the custodian did not inquire of the wife whether she had authority to enter the box; denied that the custodian informed the wife that she could have access to the box then and there and at any time thereafter by first adding her signature to exhibit B and thereafter by signing slips indicating her entry; denied that she did sign exhibit B and, from time to time thereafter with the assistance and co-operation of the servants of appellee, did enter said box without authority, knowledge or consent of appellant or his deputy; denied that appellant was never informed prior to the discovery of his loss that his wife had signed exhibit B and been given access to the box; denied that valuable articles were taken from the box by appellant's wife; denied that appellant notified appellee of the removal and absence of any articles from said box and that appellant was for the first time informed that his wife had had access to said box by appellee's president; denied that the wife converted the bonds and appropriated the proceeds thereof to her own use and dissipated and squandered the $4000 in currency and that the same was lost to the appellant; denied that the appellant demanded return of the identical property from appellee or payment of its equivalent in money; and denied that by reason of its failure to keep and perform the terms of its contract and as a direct result thereof appellant has been damaged, etc.

Appellant and his sister Ada both testified that the property as alleged was left by appellant in the box. Appellant's wife testified that she took the bonds and currency from the box and used them for herself. There is no evidence to contradict these facts. She divorced appellant soon after his discharge from military service and later married a man by the name of Fitzgerald, which name she bore at the time of the trial.

Appellee tried the case on the theory that it was not negligent in permitting Mrs. Saddler to enter the box because she was a joint lessee of the box with appellant, basing its contention upon appellant's exhibits A and B and defendant's exhibit No. 2 as explained by what took place leading up to their execution. There was no alteration of the exhibits after their execution. Each of the leasing contracts as shown by the respective exhibits was signed by appellee through Nellie G. Roberts, its custodian.

The exhibits are identical except as to the date and amount of government tax and address of lessee, and except that exhibits A and B are signed "Wm. E. Saddler" and exhibit No. 2 is signed "Mrs. Wm. E. Saddler," and except, further, that exhibit A names no deputy while the other two name Ada Saddler as deputy, exhibit B referring to her as "my" deputy and exhibit No. 2 referring to her as "our" deputy. The last-mentioned exhibit names her deputy over the signature of Mrs. Wm. E. Saddler, whereas she is named deputy on exhibit B over the signature of Wm. E. Saddler. A further difference is that Ada Saddler, deputy, signed exhibit B as such deputy, but her signature nowhere appears on exhibit No. 2. Appellee permitted Mrs. Wm. E. Saddler to sign exhibit B about ten and one-half months after appellant signed it.

The principal question for decision is, do the words "Received from Mr. or Mrs. Wm. E. Saddler" appearing on the contract establish as a matter of law that both Mr. and Mrs. Saddler are lessees of the safety-deposit box

covered by the contract? If so, she had a right to enter the box and appellee was not negligent in permitting her to do so. If not, she had no such right, as there was no other legal authority under which she could enter.

October 13, 1943, while appellant was in the military service, and while his contract, exhibit B, remained in effect, appellee entered into a purported contract with Mrs. Saddler evidenced by its exhibit No. 2 whereby it attempted to lease the same box to her and in that contract used the same words "Mr. or Mrs. Wm. E. Saddler" in the same position as in exhibits A and B. There is no evidence that Mr. Saddler gave his consent to this agreement or that he knew of it at the time or was ever notified of it until the loss was discovered. He says he did not consent to it and knew nothing of it. Appellee admits that it permitted Mrs. Saddler to enter the box on August 20, 1943, and many times thereafter. It makes no explanation of the circumstances leading up to the lease contract with Mrs. Saddler dated October 13, 1943, but its records show that she went into the box often subsequent to that date.

Nellie G. Roberts, the custodian who signed all of the lease contracts for appellee, testified as to what she thought was said by her and appellant just prior to the execution of exhibits A and B. Assuming her testimony to be proper, it is so uncertain and unreliable as to amount to nothing, and furnishes no basis upon which to rest a legal defense. She was not positive about anything. She stated in one place, referring to the words "Mr. or Mrs. Wm. E. Saddler" on appellant's exhibit A, "I do not recall what he said with reference to the names that appear there at the top." At another place she testified she conferred with Mr. Saddler, before exhibit A was drawn up, about whose name should be on the contract. She testified, "Why, he said he wanted to bring his sister in and appoint her as deputy." Counsel then stated to her that he thought she was confused and questioned her further and then she said "Well, I will be

frank, I can't keep everything in my mind clear for all of this time, but I am doing the best that I can." After stating that she had talked to Mr. Saddler before she wrote the words "Mr. or Mrs. Wm. E. Saddler" on exhibit A, she was asked, "What did he say, if anything, with reference to the script 'Mr. or Mrs. Wm. E. Saddler' that appears thereon?" She answered, "I don't think he said anything, he just signed it." After being pressed further and being told by counsel that he was trying to find out where she got the information, she stated that she asked him if he wanted his wife on the box and that she thought he said "Of course, yes." She was asked if she had any conversation with Mr. Saddler with reference to his wife signing exhibit A and answered, "Well, he said he wanted a joint contract." Then, after being asked if she had a conversation with Saddler about his wife signing exhibit A some time later, she said "I do not recall a conversation as to this exhibit * * * on that question."

This witness further testified concerning said exhibit B, and said that she had a conversation with Mr. Saddler at or about the time the words "Mr. or Mrs. Wm. E. Saddler" were placed thereon. She was asked what the conversation was and said "I am trying to think, there was a little, but it is trivial and at the time it seemed very unimportant. I asked him if he wanted the contract continued. That was the time he was going to appoint his sister deputy. I thought perhaps he wouldn't want his wife and another deputy too." She was then asked, "When you talked to him, did you use the word 'wife' to him and what did he say?" She answered, "He said 'Yes, just as it is.'" She further testified that the words "Mr. or Mrs. Wm. E. Saddler" were always placed on the contract before the signature was affixed. She also stated that Mrs. Saddler was not present when the contract was made out and that she did not remember whether she had a conversation with

Mr. Saddler that morning with reference to Mrs. Saddler signing the contract.

The president of the bank testified that after appellant had complained to other officers of the bank about the missing property, he and they came and talked the matter over with him. During this conversation the president said to appellant, in substance, "You knew your wife was entitled to get into the box, * * * and you can't put your wife in jail for going in to your box." He further testified that appellant "wasn't contesting his wife's right to go into the box but he was contesting her respect for him, I presume.". Saddler testified that he recalled no such conversation taking place between him and the bank president. This conversation having taken place after the property had been removed does not furnish any authority for Mrs. Saddler's entering the box. Had the statement been made as testified by the president, it did not charge Saddler with doing anything that would entitle his wife to get into the box. He could have understood the statement as indicating the president's understanding that she was entitled to get into the box because appellee permitted her to do so and that she could not therefore be put in jail for entering without appellant's permission.

It will be seen that all of the lease contracts contain the words "Mr. or Mrs. Wm. E. Saddler." We cannot construe the word "or" as there used as meaning "and" because such construction would be at variance with the other portions of the instrument. It is stated in the body of each exhibit that the lessor "leases to the undersigned lessee." The instrument was signed by only one lessee. The address of only one lessee is given. Rule 8 on the back of each exhibit states in substance that the lessor will allow no person access to said box "except lessee or authorized deputy or attorney-in-fact having special power to act, * * * or his legal representative in the case of death,

insolvency or other disability of lessee except as herein expressly stipulated." By the rules on the back of the exhibit it is stated "Lessee hereby acknowledges receipt of two keys to said box and space." The deputy named in said exhibit B was recognized by appellee through the appointment by Wm. E. Saddler, alone, using the words "I do hereby designate and appoint Ada Saddler as my deputy and agent," etc.

That portion of the contract stating from whom the rent was received does not determine who the lessee of the box is and cannot be considered authority for permitting entrance to the box by those whose names there appear. One may pay the rent on another's box but that would not justify his entering it. Had the appellant without any question instructed Nellie G. Roberts, the custodian, to show the rent paid by himself or by his wife that would not have changed the legal effect of the contract and would not have been authority for the wife's admission into the box. Whatever took place between the parties prior to the execution of either of the exhibits resulted in the executed form. Whatever was said between them prior to the execution of the written agreement cannot vary or alter its contents. *Armstrong Paint and Varnish Works* v. *Continental Can Co.,* 301 Ill. 102; *Fowler* v. *Black,* 136 Ill. 363.

What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself. *Noble* v. *Fickes,* 230 Ill. 594.

An agreement, when reduced to writing, must be presumed to speak the intentions of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used to express its intention. It is not to be changed by extrinsic

evidence, as to how it was understood or what was intended. *Martin Emerich Outfitting Co.* v. *Siegel, Cooper & Co.* 237 Ill. 610; *State Nat. Bank* v. *Butler,* 149 Ill. 575.

The contract was prepared by appellee and must be construed most strongly against it. *Cedar Park Cemetery Ass'n* v. *Village of Calumet Park,* 398 Ill. 324; *Murray* v. *Kaskaskia Live Stock Ins. Co.* 204 Ill. App. 568; 12 Am. Jur., Contracts, sec. 252, p. 795.

Even though Mrs. Saddler appeared at the bank with the key to the box in question this would not give appellee authority to permit her to enter it. *Herrin* v. *McCarthy,* 339 Ill. 530.

The parties agree that the leasing contract was one in bailment. The bailee's obligation to deliver or account for the property can be satisfied only by delivery to the person entitled to it, who is ordinarily the bailor himself, someone claiming under him, or one duly authorized on his behalf to receive it. *Mayer* v. *Brensinger,* 180 Ill. 110.

Where a bailee receives propery and fails to return it, the presumption arises that the loss was due to his negligence, and the law imposes on him the burden of showing that he exercised the degree of care required by the nature of the bailment. (*Schaefer* v. *Washington Safety Deposit Co.* 281 Ill. 43; *Cumins* v. *Wood,* 44 Ill. 416; *Bennett* v. *O'Brien,* 37 Ill. 250.) Appellee produced no proper evidence to overcome this presumption.

To hold in favor of the appellee upon a record such as this would establish a precedent detrimental to the rights of all holders of safety-deposit boxes. There would be little safety on which the lessee of a lock box could rely, and the value and security of being such lessee would be materially impaired. There is no question but that appellee breached its contract with appellant and failed to exercise ordinary care to protect his property as it was bound to do. From a careful consideration of the entire record, we conclude that the evidence fails to show any legal defense to

the suit, and where there is no competent evidence tending to establish any defense, a motion made by the plaintiff for judgment *non obstante veredicto* should be granted. *Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571; *Merlo* v. *Public Service Co.* 381 Ill. 300.

The judgments of both the Appellate and circuit courts are reversed. There being no legal defense to the action, judgment is entered here in favor of appellant, and against the appellee, for $7750, the amount of the property wrongfully extracted from his box, plus interest thereon at the rate of 5 per cent per annum from June 5, 1947, the date of the judgment below, until paid, and for costs.

*Reversed, with judgment here.*

Mr. JUSTICE THOMPSON, dissenting:

I am unable to agree with the majority that no legal defense exists to the action as presented in this case. The case was tried on the theory, as recognized in the opinion, that the bank was not negligent in permitting plaintiff's wife to have access to the box. The case was tried by a jury which found the bank was not negligent and that verdict was affirmed in the Appellate Court. The question presented here is whether there is any evidence which fairly tends to support the verdict.

A safety-deposit company is bound to use ordinary care in keeping a box, which is rented by a customer, although the customer has the key, as the duty of exercising such care arises from the nature of the business which the company carries on, and the obligation to discharge the duty is implied from the relation of the parties regardless of any stipulation. Ordinary diligence means that degree of care, attention or exertion, which, under the circumstances, a man of ordinary prudence would use in reference to the particular thing were it his own property or in doing the particular thing were it his own concern.

It is also a rule of law, where a bailee receives property and fails to return it, the presumption arises that the loss was due to his negligence and the law imposes on him the burden of showing that he exercised the degree of care required by the nature of the bailment. That he exercised said care the jury so found, and the trial court found that there was evidence to support the jury's findings as shown by its overruling the motion for judgment *non obstante veredicto*.

On appeal from the lower court, this judgment was affirmed by the Appellate Court, and we must therefore look to the circumstances in ascertaining if there was any negligence or whether there was a failure to exercise that degree of care which, under the circumstances, a man of ordinary prudence would use in a similar situation. As to these circumstances the evidence discloses that plaintiff executed and took copies of two consecutive yearly contracts, which bore the inscription "Mr. or Mrs. William E. Sadler" in the consideration clause. The record further shows that when the latter of these expired neither plaintiff nor his deputy made any offer or inquiry regarding a renewal of the contract for a period of more than two years, although they and plaintiff's wife continued to enter and use the box, and the wife continued to use the box and made two yearly payments of rent; that the keys to the box were placed in the wife's custody. The record further discloses that plaintiff's wife went with him to the bank and sat in the car while plaintiff put the valuables, allegedly lost, in the box. This occurred six months after plaintiff's wife had paid the rent and made a new contract during which time plaintiff had continued to enter the box without in any way questioning the arrangements or any use of the box in question.

The issues here lay in bailment and the question of negligence is presented. I am of the opinion the jury

could reasonably find from the evidence that plaintiff's conduct lulled the bank into believing, reasonably, that the wife acted with authority, and that, under the circumstances, the bank acted with reasonable care. The jury having so found and having been affirmed by the Appellate Court, the question of fact as to the bank's negligence has been settled and the judgment should be affirmed.

The contract said to have been breached expired long before the loss occurred and the events following its expiration are sufficient to support a verdict that the bank acted with due care, and the motion for judgment notwithstanding the verdict was properly overruled. The judgment of the Appellate Court should have been affirmed.

WILSON and CRAMPTON, JJ., also dissenting.