Admiral Oasis Hotel Corp., a Corporation, Plaintiff-Appellant, v. Home Gas Industries, Inc., a Corporation, and Mueller Climatrol Co., a Corporation, Defendants-Appellees.

Gen. No. 49,959.

First District, Second Division.

November 23, 1965.

Rehearing denied April 22, 1966.

 █

Irving S. Berman and Seymour I. Regal, of Chicago, for appellant.

Burke and Ryan, Robert E. Burke, and James T. Ryan, of Chicago, for appellee, Home Gas Industries, Inc.; Anton J. Valukas, of Chicago (James P. Chapman, of counsel), for appellee, Mueller Climatrol Co.

MR. JUSTICE BRYANT delivered the opinion of the court.

This appeal comes from an order entered June 26, 1964, in the Circuit Court of Cook County, Illinois, dismissing the appellant's third amended complaint for failure to state a cause of action.

The appellant, Admiral Oasis Hotel Corporation, hereafter called Admiral, purchased 59 air-conditioning units manufactured by Mueller Climatrol Co., hereafter called Mueller, but distributed and sold by the defendant Home Gas Industries, Inc., known hereinafter as Home.

Count I of the complaint alleges that when Admiral began construction of a hotel in August of 1956, one H. Schwartz, an officer and duly authorized agent and sales representative of Home, approached Irving Rootberg, the principal stockholder of Admiral, with the request that Admiral purchase its room air-conditioning units from Home. It is alleged that these air-conditioning units were manufactured by Mueller. It is further alleged "that said Schwartz did state, represent, and warrant that Mueller had commenced making a new room-air-conditioning unit and that these units were well constructed and would perform the work of cooling the rooms of said hotel as well or better than any other unit on the market; that said Schwartz also represented that said units were well constructed and durable and

able to do the job well and that Mueller had just commenced manufacturing these units and was anxious to get into the room-air-conditioning market; that Rootberg, on behalf of Admiral, did purchase said units as a direct result and consequence of the aforesaid representations and warranties upon the recommendation and representations of said Schwartz, agent for Home, as above set forth; and that the same were not purchased by trade name, except as a convenient way of defining the item to be purchased."

The complaint further alleges that these units were delivered by Home on September 6, 1956, and that they did not operate properly in the following respects: (1) the units leaked water or other liquids into the rooms, (2) the units were not dependable and required constant servicing, (3) in cool weather it was necessary to remove outside louvers and block up the exterior vents so as to prevent excessive chilling of rooms by reason of leakage of cold air through the units.

The complaint further alleges an implied warranty that all of the units "would perform the work for which they were intended, namely the cooling of the rooms of the hotel. . . ." It further alleged that on or about August of 1960, four years after the units were delivered, "because it was clear that said units were incapable of ever operating properly and satisfactorily," the said units were removed and replaced with new units produced by another manufacturer.

Admiral also claims that it was damaged in that it lost large sums of rental income for the reason that said rooms could not be rented to hotel guests if not adequately air-conditioned; that the walls, carpeting and furniture therein were damaged by reason of the leakage of water and other liquids from the units; and that Admiral had to spend $13,340 for new units. Damages are sought against the defendant Home in the amount of $75,000.

■ The first principal point raised on behalf of the seller is that the representations made by its agent,

301

Schwartz, merely constituted expressions of opinion and should not be construed as a warranty. As Home points out in its brief, "It is essential to a warranty that the purchaser shall have relied on the representations of the seller and it must have been the intention of the parties that the statements were to be construed as a warranty."

■ The allegation upon which the appellant relies is that which states that Home represented and warranted that the units were of good quality, well constructed and would perform a cooling job as well or better than any other air-conditioner on the market. Home contends that such a statement could not be construed as a warranty because it is not a positive affirmation of some fact capable of being proven or disproven and is in fact an abstraction which means one thing to one person and something else to another. It is argued, for example, that people would disagree as to how cold "cool" is. How good is "well constructed"?

■■ This argument is without merit. The standard against which these statements is to be measured is that of ordinary commercial usage and the common understanding of people in a matter such as this. Uniform Sales Act, Ill Rev Stats 1963, c 121½, § 71; Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co., 334 Ill 281, 165 NE 793 (1929). It is true that men might disagree as to whether an air-conditioner should cool to 72 degrees or 68 degrees or some other specific temperature. It is clear, however, that the machine must cool to some extent. Beyond that, whether or not an air-conditioner is or is not operating adequately is a question of fact to be decided by the trier of fact. The terms used in the alleged warranty are not so vague as not to be capable of being proved.

■ The seller claims that Admiral knew it was buying a new, untried, unproven piece of merchandise. While it is true that the manufacturer was just starting

the production of these units, it is also true that there is an allegation that the seller's agent warranted them. We believe that the complaint reasonably sets out facts, which, if proven, would establish an express as well as the ordinary implied warranty that the air-conditioners would be of merchantable quality. Uniform Sales Act, Ill Rev Stats 1955, c 121½, § 15(2).

Home also claims that an action founded upon express and implied warranties is inconsistent with the continuous use of the units for an unreasonable length of time. Home points out that Admiral used the units for four cooling seasons before taking them out. In a letter written by Admiral to Home dated October 1957, the appellant complains of the manner in which the machines operated. The letter points out that Admiral owned three other buildings which made use of room air-conditioners and that in the preceding three years an aggregate of about five or six service calls had been required for all these other units, as opposed to constant service calls required for the units manufactured by Mueller. The letter also points out that the Mueller units had to be taken from the premises for repair, while the units in the other buildings were repaired on the scene.

This letter was not incorporated in the complaint, but is before this court on a motion to amend the complaint so as to include the allegation that Home was notified that the machines did not operate properly. It is argued by Home that this letter was a part of the earlier complaints, and that appellant should not be permitted to bring this material in after having voluntarily excluded it from the third amended complaint.

■ ■ The motion to strike and dismiss the third amended complaint never set forth as grounds the fact that in this complaint there was no allegation of prompt notice. The Civil Practice Act, Ill Rev Stats 1963, c 110, § 45(1) states that "The motion shall point out specifi-

cally the defects complained of . . . ;". Several decisions have held that a motion to dismiss cannot be allowed where specific grounds are not set forth. Hitchcock v. Reynolds, 278 Ill App 559 (1935) ; Central Illinois Electric & Gas Co. v. Scully, 17 Ill2d 348, 161 NE2d 304 (1959). An obvious companion to such a rule is that grounds not specified in the motion to dismiss cannot be urged on appeal. Had these grounds been specified, appellant would have reincorporated the letter in his complaint.

■ Such an amendment may be permitted under Section 7 of the Judicial Article that the Appellate Court may exercise such original jurisdiction as may be necessary to the complete determination of any case on review and under Ill Rev Stats 1963, c 110, § 101.50, Supreme Court Rule 50 which has been adopted by this court. Since the pleadings would be more complete and since no prejudice will result to defendants thereby, the motion to incorporate the letter as part of the complaint is allowed.

■ ■ We feel that the fact the machines were retained by the appellant for such a long period of time has great probative value, but we do not think that as a matter of law this would invalidate the claim set out in the complaint. If it can be proved that Home made representations that the machines would be fixed, or had been fixed, a trier of fact might come to the conclusion that the retention of the air-conditioners was not unreasonable. Whether or not this can be shown would depend on the nature and the quality of the proof. We think that Home should be required to answer the charges brought out in the complaint. We feel the complaint satisfactorily alleges a warranty of merchantability and alleges a breach of that warranty in that the machines did not operate properly.

■ It has also been argued on this appeal that there was an implied warranty of fitness for a particular pur-

pose under the Sales Act, Ill Rev Stats 1955, c 121½, § 15(1). We do not think that the complaint alleges sufficient facts on which to base a claim under this warranty. We hold, therefore, that this complaint does not set forth a claim under an implied warranty of fitness for a particular purpose.

Count II of the complaint states two causes of action against the manufacturer, Mueller Climatrol Co. The first claim is of an implied warranty of merchantability; the second is based in negligence in that Mueller carelessly designed, constructed and manufactured the units.

■■■■ There is no question but that a purchaser may sue a manufacturer with whom he is not in privity when the cause of action arises in negligence. As the Supreme Court said in Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182 (1965). "Implicit in Lindroth v. Walgreen Co. 407 Ill 121, was the view that the general rule, rather than the exception to a so-called 'general rule,' is that a manufacturer may be liable for injuries to a person not in privity with him and that such liability is governed by the same principles governing any action for negligence. [Citations omitted.]"

■■■■ Mueller, however, points out that it gave an express warranty which specifically bars recovery for any special, indirect or consequential damages "or for any damages arising from use of the product specified herein." There are many cases in Illinois which state that a disclaimer of implied warranties in a contract of sale will relieve the seller or manufacturer from liability if the merchandise proves faulty. The courts have tended to limit such disclaimers, especially in recent years.

"As to disclaimers or limitations of the obligations that normally attend a sale, it seems sufficient at this juncture to say they are not favored, and that they are strictly construed against the seller." Henningsen v. Bloomfield Motors, 32 NJ 358, 161 A2d 69, 77, 78, 75 ALR2d 1, 14 (1960).

██ In the case at bar there was no written contract. If the plaintiff can prove that the disclaimer of warranties was not made part of the oral contract, but was merely part of the warranty that came with the air-conditioners, it cannot be bound by the disclaimer. Under such facts, the contract would have been made before delivery of the machines, and any disclaimer would be a unilateral attempt by one of the parties to limit its duties after the contract had been made. Obviously the buyer cannot be bound by such an attempt.

██ Even if the oral contract did contain some reference to a warranty, it is extremely doubtful that the buyer would be bound by the disclaimer of warranty unless he had specifically been made aware that such a disclaimer existed as part of this warranty. As was said in Henningsen v. Bloomfield Motors, supra, in the absence of fraud, one who entered into a contract without making himself fully aware of its import cannot later relieve himself of the consequences. That case, however, held that where a written contract held a disclaimer of warranties, and such a disclaimer had not been called to the attention of the buyer, the buyer could not be bound. The fact that in that case the contract was written while in the case at bar it was oral, would make no difference.

While the contract in the case at bar was made before the effective date of the Uniform Commercial Code, Ill Rev Stats 1963, c 26, we note that this opinion is also in keeping with the new legislation. Section 2–316 of the Code requires that any attempt to modify or exclude implied warranties of merchantability must *specifically* mention merchantability and must be conspicuous in the case of a written contract.

██ In short, when one purchases a product, he has a right to assume that it will be fit for normal use. A seller or manufacturer cannot disclaim its responsibility for the product unless the buyer is made fully aware that he takes the product subject to such conditions.

■ The appellee, Mueller, also argues that the complaint is not specific enough. The complaint against Mueller alleges, as in the complaint against Home, that the units leaked water or other liquids into hotel rooms, that they failed to operate in regular and dependable fashion and required constant servicing, and that they leaked cold air so that it was necessary to remove outside louvers and block up the exterior vents. Properly manufactured air-conditioners do not normally have material defects. We do not think it is necessary for the appellant to specify further in his complaint as to the causes of these defects. In cases of this sort, the purchaser is not an expert in the mechanics of an air-conditioner and cannot be expected to know, for example, precisely what causes the fluids to leak, which valve may be broken, what tube may not be connected properly. The appellant has alleged that it handled the units with care at all times, and no suggestion has been made that all these units have been tampered with in some way. We hold, therefore, that the allegations in the complaint state a cause of action of negligence either in design or construction so as to require Mueller to answer the complaint.

It has been urged that our opinion in Suvada v. White Motor Co., 51 Ill App2d 318, 201 NE2d 313 (1964), would support a ruling that the appellant could maintain his complaint insofar as it sounds in contract. The Supreme Court's opinion in that case reserved the question whether the contract action could be maintained without privity.

We hold that the complaint states a cause of action in tort in that the manufacturer placed a negligently designed or manufactured machine on the market. We feel, however, that there is no basis for a contract action against the manufacturer.

With regard to the extent of the liability of Mueller, it might be argued that the damages sought in this case are beyond the ambit of the risk this defendant took

when it put the product in question on the market. It could be argued that even if the manufacturer were held responsible for damages to carpets and draperies, it should not be held liable for loss of rents. The rationale behind such an argument would be that any manufacturer should realize that any air-conditioner is likely to be placed in a room that is furnished with carpets, rugs, or draperies. If these machines leak, damage is likely. Such an argument would then urge that a manufacturer of air-conditioners should not be held to be on notice that the machines could be sold to a hotel or motel where the lack of proper air-conditioning could cause a loss of revenue.

We will not undertake to decide such a problem here; that is a question for the trier of fact. It might be that the sale of 59 units actually put the manufacturer on actual notice that the machines were being sold to this particular purchaser. It might be. shown that the machines were in fact sent from the manufacturer to Admiral Oasis.

As was said in the recent case of Kinsch v. Di Vito Const. Co., Inc. 54 Ill App2d 149, 154, 203 NE2d 621, 624 (1964), "Whether the injury follows in a natural or probable sequence from the [negligent] acts in question is determined on the basis of whether an ordinarily prudent person ought to have foreseen that some injury might occur, although the precise injury which in fact occurred need not have been foreseen."

It will be for the trier of fact to determine whether Mueller should have foreseen the damages complained of here.

Having decided that there was not a cause of action in contract against the manufacturer,. and having decided that there was no contract entered into which would of necessity limit the extent of damages, either by a waiver on the part of the buyer of implied warranties or through the limiting language of the express warranty, we will go no further in attempting to determine the facts of the

case at bar. Any further action by this court should wait until the parties have submitted proof and the trier of fact has made findings.

The judgment of the Circuit Court is reversed, and the cause is remanded with instructions for further proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.

BURKE, P. J. and LYONS, J., concur.