PERSONAL FINANCE COMPANY, Plaintiff-Appellee, *v.* BENNIE MEREDITH *et al.*, Defendants-Appellants.

Fifth District   No. 75-212

Opinion filed June 23, 1976.

Jack Ver Steegh, of Land of Lincoln Legal Assistance Foundation, Inc., of Centralia, for appellants.

William E. Aulgur, of Eldorado, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:
Plaintiff-appellee brought suit in the Circuit Court of Marion County to recover money owed under two installment sales contracts. From a judgment for the plaintiff, defendants appeal.

Plaintiff-appellee, Personal Finance Company, is the assignee of two retail installment sales contracts under which the defendants, Bennie and Joyce Meredith, purchased a food freezer, notions, staples and frozen meat from Tri-State Foods Company. One contract provided for the purchase by the defendants of a food freezer at a cash price of $748.00, credit life insurance of $12.91, and a finance charge of $232.69, payable in 24 monthly installments of $41.40. The other contract was for "notions, staples, and frozen meat" at a cash price of $552.06, credit life insurance of $1.94, and a finance charge of $43.66, payable in six monthly installments of $99.61. The contracts were assigned to the plaintiff approximately a month after their execution.

Defendants made eight payments totaling $339.63 on the food freezer contract and total payments of $493.03 on the other contract. Plaintiff sought to collect the amounts owed on the contracts in the sum of $758.60, plus attorneys fees totaling $253.30 and $1.31 as interest accrued since maturity of the second contract, and were granted judgment for the full amount requested.

The defendants attempted to assert three affirmative defenses to the plaintiff's action: that the contracts were unconscionable, that they failed to comply with the Truth in Lending Act (15 U.S.C. §1601 et seq.) and Regulation Z (12 C.F.R. §226 et seq., and that they failed to comply with

the Illinois Retail Installment Sales Act. (Ill. Rev. Stat. 1975, ch. 121½, par. 501 *et seq.*) These defenses were stricken on motion by the trial court as insufficient in law. Defendants then petitioned the court to vacate this order, an evidentiary hearing was held, and the trial court confirmed its previous order and entered judgment for the plaintiff. The defendants here contend that the trial court erred in enforcing a contract term which wavied the buyer's right to assert against an assignee of the contract any claim or defense which they had against the seller unless they notified the sellor or assignee of the defense or claim within five days of the delivery of the merchandise purchased.

The record discloses that the defendants were induced to purchase these items by a salesman of Tri-State Foods who appeared at their home one evening while they were preparing to go bowling. They asked him to come back another night, but when he told them he was in town just that day they agreed to listen to him. The defendants testified that they agreed to purchase the food freezer and the frozen meats because the salesman made it sound "like a really good deal." They stated that at that time they did not receive a copy of the contract and the payment terms were not filled in on the contracts. Nor apparently were they furnished with a notice that they had three days to rescind the agreement as required by section 2B of the Consumer Fraud Act. Ill. Rev. Stat. 1975, ch. 121½, par. 262B.

The defendants also maintained that the contract price of the food freezer ($748) was about $300 more than the price quoted them by the salesman and that they thought they were only purchasing the freezer and the meat. The salesman did not testify, as neither the assignee nor the defendants knew his whereabouts. The record discloses that when the contracts were executed defendants were both employed but at the time of the suit they were not.

■■ Defendants first contend that the waiver of defense clause is unenforceable against them because it fails to comply with section 2D of the Consumer Fraud Act (Ill. Rev. Stat. 1975, ch. 121½, par. 262D). Waiver of defense clauses in a security agreement as a general rule are enforceable by an assignee who takes the instrument for value, in good faith and without notice of any claim or defense against the instrument except as to any "real" defense which the obligee has. (Ill. Rev. Stat. 1975, ch. 26, par. 9—206(1); ch. 121½, par. 517.) Thus, a security agreement containing a waiver of defense clause, such as the instant contracts, is given attributes of negotiability by these provisions. Section 2D of the Consumer Fraud Act provides that where a negotiable instrument is executed as a full or partial payment by a consumer in a retail installment sales transaction, if it does not contain the following notice to the consumer buyer, in ten-point type, then the consumer may assert against

the holder of the instrument any defenses he has against the seller. The statutorily prescribed notice is as follows:

"NOTICE TO BUYER

You have the right to give the assignee named (or if no assignee is named, to give the seller) written notice of any defense or right of action which you may have against the seller within 5 days of delivery of the merchandise described herein. If a notice is not received within that time, you may not assert such defense or right of action against the assignee." Ill. Rev. Stat. 1975, ch. 121½, par. 262D.

The instant contracts, however, are not negotiable instruments as they are not payable to order or bearer. (Ill. Rev. Stat. 1975, ch. 26, par. 3—104(1)(d).) Although these contracts are not negotiable instruments and, hence, not governed by the literal language of section 2D, one court has held that the notice required by section 2D should also be required for security agreements which contain a waiver of defense clause. (*Household Finance Corp. v. Mowdy*, 13 Ill. App. 3d 822, 300 N.E.2d 863 (2d Dist. 1973).) Although *Mowdy* involved an implied waiver of defense clause under section 9—206(1) of the Uniform Commercial Code, execution of a negotiable instrument together with a security agreement (Ill. Rev. Stat. 1975, ch. 26, par. 9—206(1)), we find its reasoning and analysis persuasive and applicable here. To a consumer debtor, whether he signs a negotiable instrument or a security agreement containing a waiver of defense clause, the result is the same; he can only assert against a holder or assignee of the instrument who takes it for value, in good faith, and without notice of any claim or defense one of the "real defenses" listed in section 3—305 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 3—305). Among the defenses which the consumer cannot assert are failure of consideration, fraud in the inducement and breach of warranty, perhaps the most common defenses which a consumer would have. The purpose of enacting section 2D, we believe, was to increase the likelihood that the consumer debtor would be apprised of his rights, or lack thereof, which he had as a result of executing a negotiable instrument. Assuming that this notice would enable the consumer to comprehend his contractual obligations, he would not be unfairly surprised when he later discovered that the entity to whom the installments payments had to be made was immune from his defense or claim regarding the purchased goods. Therefore we hold that section 2D of the Consumer Fraud Act is applicable to security agreements containing a waiver of defense clause in a consumer retail installment sale transaction.

■■ The instant contracts did contain a notice in the language required by section 2D. However, no competent proof exists regarding whether

this language is in ten-point type. The necessary language is in large, clear type on the front of the contracts and immediately above the defendant buyers' signatures. It is beneath other admonitions to the consumer buyer required by section 3 of the Retail Installment Sales Act. (Ill. Rev. Stat. 1975, ch. 121½, par. 503.) Hence we believe that this language was printed and positioned on the contract in such a manner so that the buyers should have noticed it, thus informing them of the waiver of defense clause on the back of the contract. There is no indication in the record that the defendants were unable to observe this notice which could violate the policy of section 2D. (*Cf. Hunt v. Perkins Machinery Co.*, 353 Mass. 535, 226 N.E.2d 228 (1967).) Therefore, we find no violation of section 2D of the Consumer Fraud Act.

Defendants next contend that Personal Finance may not claim the status of a holder in due course because it did not acquire the instant contract in good faith or without notice of any defense. The defense which appellants contend is patent on the contracts is the lack of a date appearing beside Bennie Meredith's signature, indicating his desire for credit life insurance. They contend this violates the Truth in Lending Act and Regulation Z. (15 U.S.C. §1605b; 12 C.F.R. 226.4a(5).) We disagree. These provisions require only that the cost of credit life insurance be included in the finance charge unless the request for credit life insurance is separately signed and dated. Here the cost of the insurance was included in the finance charge and thus no violation existed.

Defendants also argue that the fact that Personal Finance regularly purchased "qualified" retail installment contracts from the seller, Tri-State Foods, negates the good faith requirement necessary for Personal Finance to acquire holder in due course status. Plaintiff maintains that regardless of whether it is a holder in due course, it may still enforce the instant waiver of defense clauses. While plaintiff accurately states the law in Illinois prior to the adoption of the Uniform Commercial Code (*Commercial Credit Corp. v. Biagi*, 11 Ill. App. 2d 80, 136 N.E.2d 580 (1st Dist. 1956)), we do not believe that an assignee protected by a waiver of defense clause is entitled to the rights enjoyed by a holder in due course unless he purchases the contract for value, in good faith and without notice of a claim or defense, requirements which a holder of a negotiable instrument must fulfill to be accorded that status. (Ill. Rev. Stat. 1975, ch. 26, par. 3—302.) Section 9—206(1) of the Uniform Commercial Code and section 17 of the Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 26, par. 9—206(1); ch. 121½, par. 517) provide that an assignee who receives a contract for value, in good faith, and without notice of any claim or defense is entitled to the status of a holder in due course. This implies that one who does not so take the assigned instrument is not entitled to those rights and thus is subject to all defenses against the seller. (Ill. Rev. Stat.

1975, ch. 26, par. 3—306.) Plaintiff's position would also allow an assignee to enforce a waiver of defense clause against a debtor's "real defenses" which is clearly in conflict with the limitation placed upon the effect of these clauses by the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—206, Committee Comment 2), and is forbidden by the Retail Installment Sales Act. (Ill. Rev. Stat. 1975, ch. 121½, par. 518.) We have noted above the similarity between security agreements containing a waiver of defense clause and negotiable instruments. The manifest policy of the Uniform Commercial Code is to treat these instruments alike, subject to further restraints upon the enforceability of the waiver of defense clauses in consumer credit transactions. Therefore, plaintiff's right to enforce the instant terms depends upon its meeting the statutory requirements of section 9—206(1). Ill. Rev. Stat. 1975, ch. 26, par. 9—206(1).

We cannot agree, however, with the defendants that Personal Finance, by virtue of its business relationship with the seller, cannot claim the status of a holder in due course. While courts in other jurisdictions have held that proof of a close and substantial business relationship between assignor and assignee bars the latter from enjoying holder in due course status, none have ruled that mere proof of an agreement by a finance company to purchase from a retail seller its contracts was sufficient to deny this status. (*Unico v. Owens*, 50 N.J. 101, 232 A.2d 405 (1967); *Jones v. Approved Bancredit Corp.*, 256 A.2d 739 (Del. 1969); *Commercial Credit Corp. v. Childs*, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 729 (1940).) The record fails to indicate any other connection between Personal Finance and Tri-State Foods. It does not appear that Personal Finance furnished the instant contracts to the seller; that these contracts were immediately assigned to it; what proportion of all the contracts sold by Tri-State Foods were sold to Personal Finance; nor that Personal Finance dictated Tri-State Foods' selling policy. Moreover, the General Assembly in enacting section 17 of the Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 121½, par. 517) specified that where certain relationships between an assignor and assignee exist, a waiver of defense clause is unenforceable. The only relationship which on the facts before us might cause the instant clause to be unenforceable is that Personal Finance and Tri-State Foods were "affiliated" companies. (Ill. Rev. Stat. 1975, ch. 121½, par. 517(a).) Affiliated companies are defined in that section as including those related by common ownership or control. That statute does not suggest that an assignee who has agreed to buy a portion of a seller's installment contracts cannot assert a waiver of defense clause. Indeed such a provision might effectively preclude the enforceability of these clauses. Had the legislature intended that proof of such an agreement be sufficient to show that an assignee was affiliated with the

assignor within the meaning of section 17(a), we think it would have so stated.

■■   Other provisions of section 17 of the Retail Installment Sales Act are here applicable; however, the action of the trial court precluded admission of any testimony relative to these sections. Subsections (b) and (c) of section 17 state that an assignee who has actual knowledge or has notice of certain facts regarding the seller-assignor's history of complaints for its failure to fulfill its contractual obligations is not protected by a waiver of defense clause. (Ill. Rev. Stat. 1975, ch. 121½, par. 517(b), (c).) These inquiries are of course relevant to defendants' argument that plaintiff is not entitled to holder in due course status. The trial court ruling, however, precluded any testimony regarding prior complaints to Personal Finance concerning any of the other contracts it had purchased from Tri-State Foods and restricted evidence of complaints to the instant contracts. This type of evidence is relevant under section 17(c) and the trial court erred in excluding this testimony. Although the parties have not addressed this issue, we note the possible intervention of plain error substantially affecting the rights of the parties and remand this case to the trial court to consider whether section 17(c) of the Retail Installment Act precludes enforcement of the waiver of defense clause. *Wozniak v. Segal*, 56 Ill. 2d 457, 308 N.E.2d 611 (1974); *Meeker v. Fowler*, 35 Ill. App. 3d 313, 341 N.E.2d 412 (5th Dist. 1976).

Notwithstanding this prejudicial error which necessitates vacating the judgment appealed from we must also determine whether the instant waiver of defense clauses are unconscionable. Defendants argue that the instant contracts are harsh and oppressive; that they did not know that a waiver of defense clause existed since the clause was inconspicuous; that they are persons of little formal education; that they did not "bargain for" these clauses; and, as a matter of public policy, that an assignee is better able to protect itself against losses due to sellers of shoddy merchandise and to prevent such losses. They urge this court to adopt the rationale of decisions in other jurisdictions holding waiver of defense clauses unenforceable in consumer retail installment sales contracts. (*Unico v. Owens*, 50 N.J. 101, 232 A.2d 405 (1967); *Fairfield v. Donnelly*, 158 Conn. 543, 264 A.2d 547 (1969); *Quality Finance Co. v. Hunley*, 337 Mass. 150, 148 N.E.2d 385 (1958); *U.S. Leasing Corp. v. Franklin Plaza Apts., Inc.*, 65 Misc. 2d 1082, 319 N.Y.S. 2d 531 (1971).) Other jurisdictions have refused to adopt this proposition and enforce these clauses. *Holt v. First National Bank*, 297 Minn. 457, 214 N.W.2d 698 (Minn. 1973); *Hernandez v. S.I.C. Finance Co.*, 79 N.M. 673, 448 P.2d 474 (1968).

Clearly, waiver of defense clauses are not unconscionable *per se*, being permitted by the Uniform Commercial Code, the Retail Installment Sales Act and Illinois case law. (Ill. Rev. Stat. 1975, ch. 26, par. 9—206(1); ch.

121½, par. 517; *Commercial Credit Corp. v. Biagi*, 11 Ill. App. 2d 80, 136 N.E.2d 580 (1st Dist. 1965); *First National Bank of Elgin v. Husted*, 57 Ill. App. 2d 227, 205 N.E.2d 780 (2d Dist. 1965).) The public policy of Illinois thus does not preclude the enforcement of such clauses in consumer transactions. This policy sharply distinguishes this case from those decisions relied upon by defendants.

■■ However, because these Illinois authorities do not displace the common law principle that an unconscionable contract or clause is unenforceable, that principle is applicable to the instant transaction. (Ill. Rev. Stat. 1975, ch. 26, par. 1—103.) We say this notwithstanding the distinction drawn by the Uniform Commercial Code between an "agreement" and a "contract." (Ill. Rev. Stat. 1975, ch. 26, pars. 1—201(3), (11).) Section 9—206(1) provides that an "agreement" by a buyer or lessee that he waives his right to assert against an assignee his claims or defenses against the seller is enforceable by certain assignees. An agreement is the bargain in fact of the parties and is not necessarily the legally binding "contract" as determined by the Uniform Commercial Code and the law of contracts. While this definition could be interpreted as indicating that the common law principle that an unconscionable contract or clause is unenforceable is not applicable to a waiver of defense clause, we do not think it should be so interpreted. Courts will not permit printed, nonnegotiated terms in a seller's contract to waive the buyer's rights and eviscerate the negotiated terms of the transaction, unless the buyer is aware of these terms. (*Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*, 68 Ill. App. 2d 297, 306, 216 N.E.2d 282, 286 (1st Dist. 1965); see *Berg v. Stromme*, 79 Wash. 2d 184, 484 P.2d 380 (1971).) Viewed in this light, unconscionability is merely a standard to determine the actual bargain of the parties, of their "agreement." (Ill. Rev. Stat. 1975, ch. 26, par. 1—201(3).) Furthermore, the language of a contract is not controlling as to the parties' "agreement." Other circumstances such as course of dealing, usage of trade or course of performance are also relevant to the inquiry of the parties' bargain in fact. We believe the relevance of these considerations expresses a legislative policy in favor of courts' determining the actual agreement of the parties and against enforcing printed contract terms in a mechanical fashion. Therefore we cannot state that the instant clauses can never be unenforceable on the basis of unconscionability.

■■ An unconscionable contract was unenforceable at common law in Illinois as were individual clauses to the extent they produced an unconscionable result. (See *Lear v. Chouteau*, 23 Ill. 37 (1859); *Wood, Stubbs & Co. v. Kaufmann*, 233 Ill. App. 138 (1st Dist. 1924).) An unconscionable contract has been described as a one-sided contract (*Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948); *Lear v.*

*Choteau*) or one which no man in his senses and not under delusion would make and no honest and fair man would accept. (*Earl of Chesterfield v. Janssen*, 2 Ves.Sen. 154, 28 Eng. Rep. 82, 100-01 (1750); *Hume v. United States*, 132 U.S. 406, 33 L. Ed. 393, 10 S. Ct. 134 (1899).) Other courts have stated that where the aggrieved party reasonably did not know that a certain clause was in the contract or had no meaningful choice but to have that clause included in the contract, that the clause is unconscionable. (*Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D. C. Cir. 1965); *Weaver v. American Oil Co.*, 257 Ind. 458, 276 N.E.2d 144 (1971).) A clause may also be unconscionable if it purports to eliminate or limit the other party's right to assert and recover for a breach of contract or for a tort arising from the transaction. Ill. Rev. Stat. 1975, ch. 26, par. 2—719(3); *Marshall Milling Co. v. Rosenbluth*, 231 Ill. App. 325 (1st Dist. 1924) (liquidated damages clause); *Weaver v. American Oil Co.*, (exculpatory and indemnification clauses); *Eckstein v. Cummins*, 41 Ohio App. 2d 1, 321 N.E.2d 897 (1974) (disclaimer of warranty and limitation of remedy clauses); *cf. Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*, 68 Ill. App. 2d 297, 306, 216 N.E.2d 282, 286 (1st Dist. 1965) (disclaimer of implied warranties); *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388, 261 N.E.2d 1 (4th Dist. 1970) (limitation of remedy clause).

A waiver of defense clause is similar in its effect to a disclaimer of liability clause. The latter term bars the opposite party from asserting a claim for breach of contract against the party protected by the clause, just as the former protects an assignee. Another analagous clause is a confession of judgment clause. These clauses are not void but can be useful terms to contracting parties in allocating the burdens and risks of a transaction. However, the use of these provisions can be abused. See *Swarb v. Lennox*, 405 U.S. 191, 31 L. Ed. 2d 138, 92 S. Ct. 767, (1972) *aff'g* 314 F. Supp. 1091 (E. D. Pa. 1970).

We are well aware of the disparity of sophistication and bargaining power that frequently exists in the consumer retail installment sales market and the abuses of the mechanism of judicial enforcement which can result from automatic enforcement of these "agreements." (See generally *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 60 (1960).) Courts have refused to bind a person who has little education, does not speak or read English, or who has been the victim of deceptive sales techniques, resulting in lack of knowledge or notice of the contract terms. (*Williams v. Walker-Thomas Furniture Co.; Frostifresh Corp. v. Reynoso*, 52 Misc. 2d 26, 274 N.Y.S.2d 757 (1966), *rev'd on issue of damages and aff'd*, 54 Misc.2d 119, 281 N.Y.S.2d 965 (App. Div. 1967); *Nu Dimensions Figure Salons v. Becerra*, 73 Misc.2d 140, 340 N.Y.S.2d 268 (1973), *aff'd*, 79 Misc.2d 158 (App. 1974); compare *Neal v. Lacob*, 31 Ill. App. 3d 137, 334 N.E.2d 435 (1st Dist. 1975).) Proof of these objective

indications of an aggrieved party's ignorance of the contract are exceptions to the general rule, well established in Illinois, that a person who signs a contract has manifested his intention to be bound by the terms of that contract and cannot claim he was ignorant of those provisions. *Saddler v. National Bank*, 403 Ill. 218, 85 N.E.2d 733 (1949); *Abrams v. Pomeroy*, 13 Ill. 298 (1851).

■■ Here the appellants claimed that they did not have an opportunity to read the contracts when they agreed to purchase the freezer and the meat. Nevertheless they signed the contracts and had them in their possession for several months before defaulting. Joyce Meredith testified that they received the contracts when the food and the freezer were delivered while Bennie Meredith stated that the contracts were not received until after that date. By either version, they paid on the contracts for more than four months after the contracts and the merchandise were delivered. While it was alleged that the appellants had little formal education, no proof of this allegation was offered. The record does not indicate that appellants were precluded from examining the contract before they signed. Although their decision to purchase the freezer and food was induced by the salesman's representations, their failure to examine the contract, by their own testimony, was not caused by the salesman's alleged unfair techniques but by their haste to get to their bowling game.

Defendants did not lack a meaningful choice since there is no indication in the record that the items purchased were necessities to defendants or that defendants could not have purchased these same items on credit without these clauses from other sources. (*Block v. Ford Motor Credit Corp.*, 286 A.2d 228 (D.C. App. 1972).) Nor did defendants make any showing that the five-day limitation on the waiver of defense clause is conscionable. They have neither alleged nor proved that whatever claim or defense they have against Tri-State Foods was because of a latent defect in the goods or such deficiency in the delivered goods as to constitutute a breach of the contract by the seller for failure to deliver those goods for which the defendants contracted. *Cf. Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y.2d 398, 244 N.E.2d 685 (1968); see *Wood, Stubbs & Co. v. Kaufmann.*

As discussed earlier, the contracts contained an admonition to the defendant buyers, prominently placed on the face of the contracts above the space for defendants' signatures and in readable type, that unless the defendants notified the person to whom the contracts were assigned within five days of the date they received the merchandise of any claim they had against the seller, they could not assert a claim against the assignee later. Because from the face of the contracts we believe that the defendants should have been aware of the clauses they now challenge and have failed to demonstrate that when they signed the contracts and after

they received the contracts they were precluded from reading and understanding their rights under the clause or that they could not discover defects in the merchandise or notify the assignee of their complaints within the five-day period, we must conclude that the instant waiver of defense clauses are not unconscionable.

For the foregoing reasons the judgment of the Circuit Court of Marion County is reversed and this cause is remanded to that court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

EBERSPACHER and G. J. MORAN, JJ., concur.