Sol H. Kesner, Appellee, v. Barnett Faroll et al., Trading as Faroll Brothers, Appellants.

Gen. No. 36,066.

Heard in the first division of this court for the first district at the June term, 1932. Opinion filed December 29, 1932.

PINES, MORSE & STEIN and WALTER BACHRACH, for appellants; WALTER BACHRACH, ALVIN E. STEIN and ARTHUR MAGID, of counsel.

SAMUELS, COSTELLO & GREENBERG, for appellee; EDWARD WOLFE, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action in trover for the conversion of certain stocks defendants pleaded the general issue. On trial by jury there was a verdict for plaintiff, on which after motions for a new trial and in arrest and for judgment *non obstante veredicto* had been overruled, judgment was entered for plaintiff in the sum of $24,535.13. From that judgment defendants have perfected this appeal.

At the close of plaintiff's evidence and again at the close of all the evidence, defendants made a motion for a directed verdict in their favor, which was denied, and the principal (and we think the controlling) question in the case is whether such instruction should have been given; in other words, whether as a matter of law defendants were guilty of conversion as charged.

The facts in brief are: Plaintiff was the customer of defendants who were stockbrokers. He carried a margin account with them. November 11, 1930, defendants sold securities in their possession belonging to plaintiff of the value of the amount for which judgment was entered, and applied the proceeds of the sale to the satisfaction of the obligations of one Morton Leopold, another customer and friend of plaintiff.

Defendants claim (which plaintiff denies) that plaintiff was liable for the Leopold account under the terms of a written guaranty. The evidence shows that plaintiff protested against the proposal of defendants to treat this account of Leopold as if it were his own and wrote letters demanding that the accounts be restored

to their former condition. The parties upon the trial produced evidence as to alleged oral conversations concerning the principal matter in issue, and certain letters of plaintiff directed to defendants were admitted in evidence (one of them over a general objection by defendants that it was self-serving).

It is now urged that this ruling of the court was erroneous. The letters were competent for the purpose of showing the demand of plaintiff for the restitution of his property. *Morehouse v. Terrill,* 111 Ill. App. 460; *Western Underwriters Ass'n v. Hankins,* 221 Ill. 304. These letters were also parts of mutual correspondence and, although in some respects self-serving, were admissible under the rule announced in *Schwarzschild & Sulzberger Co. v. Pfaelzer,* 133 Ill. App. 346, and *National Importing & Trading Co. v. E. A. Bear & Co.,* 236 Ill. App. 426, reversed on other points at 324 Ill. 346.

It is also urged that the court erred in giving and refusing certain instructions, but we think it unnecessary to discuss these at length, since upon consideration of the whole record we are of the opinion that substantial justice has been done, and that another trial could not under any circumstances produce a different judgment which would be allowed to stand. *Stewart v. Clark,* 194 Ill. App. 2; *Johnson v. Duke,* 247 Ill. App. 372; *Ford v. Ford,* 257 Ill. 341; *Pridmore v. Chicago, R. I. & P. Ry. Co.,* 275 Ill. 386.

As already stated, we regard the controlling question in the case to be one of law—namely, whether defendants rightfully sold the property of plaintiff to meet the obligations incurred by Leopold. There is on this point practically no issue of fact. Some evidence, it is true, was offered tending to show that the Leopold account was originally opened by plaintiff under the name of Leopold, but the overwhelming preponderance of the evidence shows this is not true; therefore, a ver-

dict for defendants on that theory could not be allowed to stand.

The issue of law, however, is not so free from difficulty, and the facts bearing upon it would seem to be as follows:

Plaintiff opened a stock account with defendants September 13, 1926. The account was subsequently closed but afterward reopened. At the time of opening the account plaintiff signed a written statement in and by which he consented that transactions should be subject to the rules and customs of the exchange; that securities from time to time carried or deposited to protect his account might be loaned or pledged by defendants separately or together with other securities, either for the sum due thereon or for a greater sum, without notice to him; that on all marginal business defendants might close transactions and sell all securities from time to time carried in his account or deposited to protect the same whenever the margin might be deemed insufficient by defendants, all without demand for margin, notice of the closing or of sale either as to time or place. By another writing executed a few days later and which appears in evidence as defendants' Exhibit 2, plaintiff agreed:

"In respect of all accounts which the undersigned now has, or may hereafter have with you, for the purchase or sale of securities or commodities, or contracts for commodities, it is understood and agreed as follows:

. . . . . .

"All securities or commodities, or contracts for commodities, now held or hereafter purchased by you for, or now or hereafter deposited with you by, the Undersigned, are to be held by you *as security for the payment of all liabilities of the Undersigned to you, however, and whenever arising,* and you are hereby authorized, without further notice to the Undersigned and without regard to whether you have in your pos-

session or subject to your control at the time thereof, other securities, commodities or contracts for commodities of the same kind and amount, in the usual course of business to repledge, rehypothecate (either for the amount due you from the Undersigned, or for a greater sum) and loan the same from time to time separately or together with other securities; and you shall not be required to deliver to the Undersigned the same certificates or securities deposited or received but only certificates or securities of the same kind and amount."

Another part of the writing provided in substance that upon failure of plaintiff to comply with any of the provisions, or whenever deemed necessary for the protection of defendants, defendants were authorized and empowered to sell, assign and deliver all or any part of the securities, commodities or contracts for commodities pledged thereunder upon any exchange or market or at any public or private sale, without advertisement or notice.

Morton Oppenheimer, well known to plaintiff, held a position with defendants known as "customer's man." He was also well acquainted with Morton Leopold. In addition to this stock account plaintiff also carried with defendants a grain account, and both his stock and grain accounts were at all times kept in good shape and amply protected as to margins. In the year 1929 Leopold also opened a trading account with defendants through Oppenheimer. Apparently plaintiff and Leopold were very close friends. Plaintiff seems to have suggested Leopold to Oppenheimer as a prospective client of defendants. On February 15, 1929, plaintiff wrote defendants, attention of Mr. Mort Oppenheimer:

"Please use any collateral belonging to me that may be necessary to guarantee sufficient margin for the purchase of 100 shares of General Electric of England stock that was purchased in the name of Mort Leopold."

Leopold thereafter traded on his own account. At a later date plaintiff, who owed Leopold $1,800, in payment of same transferred a credit of that amount to the account between Leopold and defendants.

In May or June, 1930, Oppenheimer told plaintiff that Leopold's account was light and that Leopold had told him that he did not have any more collateral. Oppenheimer asked plaintiff if he would guarantee the Leopold account. Plaintiff says that he told Oppenheimer that he would be glad to do so. Defendants then sent a written form of guaranty to plaintiff which he, however, refused to sign. Nevertheless, on June 4, 1930, plaintiff wrote (on a printed form prepared by defendants) and mailed the following letter:

"In accordance with our discussions heretofore held I hereby guarantee the account of Morton Leopold, 5454 South Shore Drive, Chicago, as shown on your statement rendered (June 1,*) 1930, indicating that said Leopold is indebted to you in the sum of $43,536.81 and that you are holding against that account the following:

125 shares Columbia Gas—
103 15/1000 shares Simmons Bed—
103 3/200 shares Electric Bond and Share—
100 shares General Electric—

"*It is a distinct condition of this guarantee that there are to be no additional trades of any kind,* nature or description in this account unless with my knowledge and written consent, and that any purchases or sales hereafter made on this account (shall only be made by me*) and that I have full authority to sell and handle and dispose of anything in the account from this date as I may see fit until such time as this guarantee shall be terminated.

"*(The words within parentheses are stricken out, and the words in the left-hand margin are in pen and ink handwriting.)"

"I shall have Mr. Leopold write you a letter confirming this arrangement as far as handling of the account is concerned from this date."

So far as the record indicates Leopold did not write a letter as promised.

Defendants contend as a matter of law that upon this uncontradicted evidence they could not be found guilty of conversion; that, to use their own words, "when plaintiff prepared and signed the written agreement of June 4, 1930, whereby he guaranteed the Leopold account, *the debit balance therein became his liability,* and the stock in his account stood as security for its payment." Defendants urge that it is well settled under the authorities that the word "liability" is a term of broader signification than "debt" and includes "contingent responsibility." A number of authorities such as *Home Ins. Co. of New York v. Peoria & Pekin Union Ry. Co.,* 178 Ill. 64; *State v. Sheets,* 26 Utah 105, 72 Pac. 334; *Cochran v. United States,* 157 U. S. 286, and *Fidelity & Deposit Co. of Maryland v. Commonwealth Trust Co.,* 119 N. Y. S. 598, justify this contention.

Defendants therefore conclude that the obligation, whatever it may have been, assumed by plaintiff under the guaranty of June 4, 1930, created a liability which was covered by the provisions of the prior writing. The contention is plausible but not persuasive. Even if we assume that the writings executed at the opening of the account of Kesner with defendants in 1926, which was afterward closed, were given new life and validity when another account was opened, it would by no means follow that the construction of these writings for which defendants contend should be accepted as expressing the intention of the parties. The subject matter of the writings was in essence distinct and different. The first writings concern the obligations which plaintiff assumed as principal. The writing of

June 4 concerns a relationship entered into which was that of an accommodation guarantor whose contingent liability was assumed without compensation. A guarantor who assumes such obligation voluntarily and without compensation is a favorite of the law. *Gunsul v. American Surety Co. of New York,* 308 Ill. 312; *Grinnell Realty Co. v. General Casualty & Surety Co.,* 253 Mich. 16. Such an accommodation guaranty will be liberally construed in plaintiff's favor. *Baker v. Peterson,* 300 Ill. 526; *Marks v. Knofsky Co.,* 233 Ill. App. 293; *Mathes v. Stewart,* 249 Ill. App. 558; *Schiff v. Continental Nat. Bank & Trust Co.,* 255 Ill. App. 333. That the first writings were intended to be limited to the personal obligations of plaintiff appears from the opening paragraph of defendants' Exhibit 2, which has already been recited. That agreement concerned only personal accounts of Kesner with defendants which then or thereafter existed. As to the phrase "all liabilities," it is also to be noticed that these general words follow a particular description and therefore are properly to be construed as limited to such kind of obligation as was particularly described. *Chicago Union Traction Co. v. O'Connell,* 224 Ill. 428; 13 Corpus Juris 537, par. 501.

Again, the form used for the guaranty of June 4 was a printed form prepared by defendants and will, therefore, in case of ambiguity, be construed against defendants and in favor of plaintiff.

In view, therefore, of the fact that the writings of 1926 by their express terms are limited to the personal obligations of Kesner, in view of the rule of *ejusdem generis* applicable thereto, and in view of the nature of the obligation assumed by the conditional guaranty of June 4, 1930, which must be strictly construed in plaintiff's favor, we hold that the phrase "all liabilities, however and whenever arising," is not applicable to the guaranty of June 4, 1930.

The question to be decided therefore depends alone upon the proper construction of this letter of plaintiff dated June 4, 1930. The uncontradicted evidence shows that after the execution of that guaranty, defendants without the knowledge and consent of plaintiff made a number of sales of the Leopold securities which are described in the guaranty. The guaranty is by its terms upon the express condition that there are to be no "additional trades" of any kind, nature or description without the consent of the guarantor. Defendants say that these were not "additional trades" within the meaning of the guaranty. They say that these were "rather the enforcement of lien rights against the stock in the Leopold account which defendants, as pledgees, possessed in respect of purchase transactions occurring prior to June 4, 1930." They point out the different relationships of agent, creditor and pledgee which the stockbroker sustains toward his customer as set forth in *Markham v. Jaudon,* 41 N. Y. 235; *Richardson v. Shaw,* 209 U. S. 365, and *Brewster v. Van Liew,* 119 Ill. 554.

No evidence was offered tending to show that the phrase "additional trades" by reason of a custom or otherwise had any well defined, special meaning. The construction for which defendants contend is inconsistent with the context of the writing which specifically states, "and that I have full authority to sell and handle and dispose of anything in the account from this date as I may see fit until such time as this guarantee shall be terminated."

We therefore hold that these sales which were made without the consent and authority of plaintiff violated the condition upon which the guaranty was made and prevented any obligation on the part of plaintiff to pay the debts of Leopold arising thereunder. There is a suggestion that there is some evidence tending to show that the condition was orally waived, but even if

we might regard such a waiver as valid the verdict of the jury precludes us from holding that such waiver was ever made.

It is further averred that the declaration alleged a malicious conversion; that malice was therefore the gist of the action; that there was no evidence tending to show malice and that the motion of defendants in arrest of judgment should have been granted for that reason. Defendants cite *Seney v. Knight,* 292 Ill. 206; *Greener v. Brown,* 323 Ill. 221; *Brown v. People,* 237 Ill. App. 537, and similar cases.

The sale of the stock of one person, a customer, to pay the debts of another customer would seem to be about as clear a case of conversion as could be well imagined. The fact, if it were a fact, that defendants supposed they had a legal right so to do, would hardly change the nature of the transaction. The authorities upon which defendants rely are cases construing the Insolvent Debtors' Act, Cahill's St. .ch. 72, ¶ 4 *et seq.,* and the distinction between the ordinary use of the word "malice" and its use in that act as set forth in these cases was pointed out in *Scanlon v. Whalen,* 249 Ill. App. 19, where practically all of these cases are reviewed. Malice in the ordinary legal sense does not necessarily include as an indispensable element ill will or hatred. *London Guarantee & Accident Co. v. Horn,* 206 Ill. 493. Malice is a conscious violation of the lawful right of another to his prejudice. *Schonwald v. Ragains,* 32 Okla. 223, 122 Pac. 203, 39 L. R. A. (N. S.) 854; *Wilson v. Lapham,* 196 Ia. 745, 195 N. W. 235. Within this meaning the facts as found by the jury establish malice with persistence therein.

We think the judgment just, and it is affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.