King Korn Stamp Company, a Corporation, Plaintiff-Appellant, v. Guaranty Bank & Trust Company, a Corporation, Defendant-Appellee.

Gen. No. 53,332.

First District, Second Division.

September 16, 1969.

■■■

Neistein, Richman & Hauslinger, of Chicago (Harry A. Young, Jr., Arthur D. Nordenberg, and Morton J. Hauslinger, of counsel), for appellant.

Goldberg, Weigle, Mallin, Gitles & Parson, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

An action was brought by plaintiff to recover from defendant the sum of $24,317.89, which sum the defendant had "set off" from the proceeds of a $50,000 certificate of deposit which was being held pursuant to a pledge and guaranty agreements given by plaintiff to secure a loan made by defendant to plaintiff's debtor, Atlas-United Wholesale Company, Inc., hereafter referred to as Atlas-United.

The case came before the trial court upon the pleadings and the evidence. The court heard oral testimony and considered a stipulation of facts, the facts and documents contained therein, together with additional documents admitted in evidence, then entered judgment for the defendant. This appeal is taken from that judgment.

DeJay Stores, Inc. (DeJay), and King Korn Stamp Company (King Korn) executed guaranty agreements under which they guaranteed an extension of credit by the defendant bank to Atlas-United. DeJay's guaranty, in the sum of $35,000, was dated November 29, 1961, and King Korn's guaranty, in the sum of $50,000, was dated November 30, 1961.

The agreement of King Korn, signed by one of its then vice-presidents (Norman J. Patinkin) before being executed, contained the following provision: "The granting of credit from time to time by said Bank to said Debtor in excess of the amount of this guaranty and without notice to the undersigned is hereby also authorized and shall in no way affect or impair this guaranty." This entire provision was stricken from the agreement with a line drawn through each word.

On December 2, 1961, the loan committee of the defendant bank met and discussed the matter of a loan to Atlas-United in the sum of $85,000. The result of the meeting was a $50,000 18-month loan to Atlas-United at 5½ percent interest, payable monthly. An additional loan of $35,000 for 90 days with interest at 6 percent was made to Atlas-United, which was secured by DeJay's guaranty and pledge. The loans were repayable as follows: five notes in the principal amount of $2,777.77 each, maturing at successive monthly intervals; one note for $35,000, and the seventh note in the principal sum of $36,111.15. The $35,000 note was due March 4, 1962, but was renewed on March 9, 1962, by a $35,000 note maturing June 4, 1962, the same date on which the $36,111.-15 note was to mature.

Prior to June 4 the loan committee voted to renew Atlas-United's obligations; accordingly, when the $36,111.15 note matured on June 4 it was renewed, and the defendant accepted a series of six renewal notes from Atlas-United, payable to defendant in the total amount of

431

$36,111.15. None of these notes was ever paid. On the $35,000 note which matured June 4, 1962, a payment of $5,000 was made, and defendant accepted a renewal note for the $30,000, maturing on September 4, 1962.

On June 4, 1962, which was the original date set for the payment of the $35,000 and the $36,111.15 notes, Atlas-United had on account with the defendant the sum of $61,641. On June 22, Atlas-United filed a petition for an arrangement under chapter XI of the Bankruptcy Act as amended. On June 28, 1962, the defendant attempted to set off the total amount Atlas-United had on deposit against its total debt of $66,111.15, but a court order determined $37,204.51 as the proper amount to set off, leaving the defendant with a claim against the debtor of $28,906.64. Subsequently the defendant was allowed to set off an additional $3,362.62, thereby reducing its claim against Atlas-United to $25,544.02. Thus, the defendant was allowed a total setoff of $40,567.13 from the $61,641 that Atlas-United had on deposit. From this setoff the defendant applied $30,000 against DeJay's guaranty, thereby discharging DeJay from its obligation. It applied the $10,567.13 balance of the setoff against the plaintiff's $50,000 guaranty, leaving a total unpaid balance of $25,544.02 from Atlas-United, which the defendant took from plaintiff's $50,000 guaranty certificate of deposit. Plaintiff later received $1,226.13 as a final payment of the net proceeds in the bankruptcy case, leaving a net loss of $24,317.89, which sum plaintiff demanded defendant to return from its $50,000 pledge. The defendant refused, and plaintiff sued for the $24,-317.89. As we have stated, the trial resulted in a judgment for defendant.

Plaintiff first argues that a condition of its extension of the $50,000 guaranty was that no more credit than that amount be extended to Atlas-United, and that when defendant loaned $85,000 to Atlas-United it breached the condition, thereby voiding the guaranty and releasing

432

plaintiff from any duties under the guaranty. Plaintiff contends that even if it had knowledge of a potential breach of the guaranty it was under no duty to object to such breach.

Plaintiff further argues that facts were available to defendant on June 4, 1962, the date defendant renewed Atlas-United's obligations, which facts were such that a prudent lender would not have given Atlas-United the renewal sought, and that by allowing the renewal under such conditions the defendant recklessly imperiled the rights of the plaintiff, thereby releasing plaintiff of its obligations under its guaranty. In answer, the defendant argues that the plaintiff had knowledge of the proposed extension of the $85,000 credit to Atlas-United; that one of the participating officers of the defendant bank was also a representative of plaintiff and that knowledge of the transaction should, therefore, be imputed to the plaintiff. The defendant also argues that certain language in the agreement between plaintiff and defendant clearly and unconditionally sets forth defendant's right of renewal or extension of a loan without notice, and the defendant asserts that its renewal was not reckless; that even if it were, any implied duty defendant owed plaintiff as a result of the guaranty agreement was waived by the plaintiff.

Defendant calls attention to the following language in the agreement between it and the plaintiff:

> "The liability hereunder shall in no wise be affected or impaired by (and said Bank is hereby expressly authorized to make from time to time, without notice to anyone) any . . . renewal, extension, indulgence, alteration, exchange, change in, or modification of any said indebtedness, liabilities and obligations, either express or implied, . . . ."

The defendant argues that this language is clear and unconditional and stipulates that any renewal, extension,

433

etc., does not impair the guaranty, and that such clear language cannot be avoided by the plaintiff-guarantor.

■ The greater part of defendant's argument in this court is with reference to the alleged interrelationship between plaintiff and defendant and the question of whether or not matters decided by the defendant should ipso facto be construed as known and acceded to by the plaintiff. In particular, the defendant points out that the man who signed the guaranty agreement for King Korn was also on defendant's loan committee at the time the $85,000 loan was granted to Atlas-United. The president and a director of the plaintiff company during 1961 and 1962 was also a director of the defendant bank. Robert Adler, a director of plaintiff company, was also elected as a director of the defendant bank. It appears that the plaintiff owned seven percent of defendant's corporate stock. Defendant urges that with this background, when Patinkin approved the $85,000 loan to Atlas-United he was serving in a dual capacity as a director and a member of the loan committee of the defendant bank, and at the same time was, in essence, King Korn itself.

■ In its brief the defendant asks, "If the Defendant's loan officers could not rely on the fact that Patinkin was speaking for King Korn when Patinkin said the Atlas-United loan was 'O. K.,' then who of King Korn's officers could the Defendant rely on as speaking for King Korn. The Plaintiff's President? He was the Vice Chairman of the Defendant's Board of Directors." It would seem that the answer to defendant's question would be that they could quite confidently rely on the plaintiff's officers and could have directly asked them if they would allow an additional loan to the debtor. There was no question that Patinkin was acting in a capacity in no way related to his duties as an officer of the plaintiff company. A corporate resolution of plaintiff expressly recognized that the "officers" are authorized to take

434

necessary action, and by the use of the plural it would seem most unwise for the defendant to rely on the word of one officer, especially when he is not even directly asked whether his approval of the transaction is intended to bind the plaintiff.

The defendant admits that it had knowledge of this resolution, but argues that the resolution gave carte blanche to any of the named officers to do any act on behalf of the plaintiff, since the language states that they are authorized ". . . for and in the name and on behalf of this company to execute, acknowledge and deliver all such instruments and to take all such other action as they may deem necessary or advisable in the premises." It is absurd to attempt to interpret this language as meaning that when Patinkin, acting as a member of the defendant's loan committee while a director of the plaintiff company, stated the loan to Atlas-United was "O. K.," thereby bound the plaintiff to the extension. The defendant's argument fails because it does not show that Patinkin had either the actual or the apparent authority to bind the plaintiff to an extension.

The clause on which defendant relies (beginning with "The liability hereunder shall in nowise be affected or impaired. . . .") grants the defendant the right to extend or renew guarantor's obligation, and this right is recognized under an identical phrase in Continental Illinois Nat. Bank & Trust Co. v. Cardwell, 287 Ill App 227, 4 NE2d 770. The defendant urges that this clear and unconditional language cannot be avoided by the plaintiff, and we agree that the plaintiff cannot avoid the obligation assumed by its guaranty. However, the import of such a clause is limited in scope and does not grant the defendant the right to lend more money to the debtor than that agreed to by the guarantor. Such a right was intended to arise from the clause which stipulated that the bank would have the right to grant credit

to the debtor in excess of the amount of the guaranty, but as we have pointed out, that particular clause was stricken from and never became a part of the agreement.

Consequently, in seeking to find an alternative ground upon which to assert a modification of the guaranty, the defendant argues that Patinkin's action of assenting to the loan of $85,000, while acting as a member of the defendant's loan committee, bound the plaintiff to a modification of its agreed obligation. We feel that Patinkin's action is far too tenuous to permit the interpretation that it was a binding commitment on behalf of the plaintiff, especially since there is no evidence that even suggests Patinkin had been asked whether or not his "okay" of the Atlas-United loan was intended to serve as a modification of King Korn's guaranty. Even if he had been expressly asked that question, it is highly debatable whether Patinkin had the apparent authority, under the circumstances, to speak for the plaintiff on a matter of such importance. Although Patinkin had signed the original guaranty agreement as agent for plaintiff, that fact standing alone does not mean that the original decision to guarantee the loan was solely his. What it really means is that once such a decision had been made by the officers of the corporation, Patinkin was the officer designated to sign the agreement. His authority to bind the plaintiff to the Atlas-United loan of $85,000 was not established, and the circumstances under which the defendant seeks to fix Patinkin's consent on behalf of the plaintiff are far too casual to amount to an intended binding assent. We conclude that the plaintiff did not assent to the lending of $85,000 to the debtor.

It remains to be decided whether or not the granting of credit to the debtor in the sum of $85,000 amounted to a breach of the guaranty of such a character as would release plaintiff from its obligations under the said guaranty. The defendant argues that a condition prece-

436

dent was read into the agreement that no more than $50,000 be loaned the debtor, and that this condition results from deleting the clause expressly granting the defendant the right to give more credit to the debtor than was expressly provided for. We cannot agree with this analysis because to do so would require looking to a clause which was never a part of the contract and drawing inferences from the fact of its deletion and omission. Rather, we should simply look at the contract as it stood between the parties without any provision at all regarding the right of defendant to grant credit in excess of that guaranteed by plaintiff.

It is a rule that guaranty agreements are to be strictly construed in favor of the guarantor, and we must consider that there was no provision in the agreement giving the defendant any right to extend more credit to the debtor than plaintiff agreed to guarantee.

The plaintiff cites Wilson v. Espert, 90 Ill App 111, affd 190 Ill 629, 60 NE 923, in which case a seller sued a purchaser for specific performance of a contract for the sale of real estate. The printed contract provided that if the purchaser failed to perform the contract promptly and as specified, the earnest money should "at the option of the vendor" be forfeited as liquidated damages and the contract should be null and void. Before the contract was signed by the purchaser the words "at the option of the vendor" were deleted. The court held that the deletion took away from the seller his power to compel specific performance and left him only the right to retain the earnest money as liquidated damages.

In the case before us, as in Wilson, the deletion of certain provisions of the contract removed from the defendant the power to extend credit to Atlas-United in excess of $50,000 guaranteed by plaintiff. There seems to be no reason to vary from the normal rule that a court simply looks to the contract as ultimately executed, in attempting to ascertain its meaning.

Looking thus at the contract and construing the guaranty most favorably for the guarantor, we must agree with the plaintiff's argument. In considering the guaranty agreement the rule is that it must be strictly construed and the liability of a guarantor cannot be extended by construction. Continental Illinois Nat. Bank & Trust Co. v. Cardwell, 287 Ill App 227, 4 NE2d 770. In the agreement before us there is no provision with reference to the right of the bank to grant the debtor more credit than that specifically set out and guaranteed by plaintiff in the agreement. We must conclude that the defendant was not authorized to extend more credit to the debtor than the $50,000 set out in the agreement, and if he did so he would breach the guaranty agreement.

■ Since we have found that Patinkin's actions did nothing to change the situation, it must logically follow that plaintiff was relieved of its obligations under the guaranty agreement when the defendant loaned the debtor an additional $35,000 over and above the agreed guaranty of $50,000. Consequently, defendant was not entitled to any proceeds from plaintiff's $50,000 certificate of deposit.

The judgment of the trial court in favor of defendant is reversed and the cause is remanded with directions to enter judgment in favor of plaintiff and to take any other and further proceedings consistent with this opinion.

Reversed and remanded with directions.

LYONS, P. J. and BURKE, J., concur.