JACK DEE, Plaintiff-Appellant, *v.* BANK OF OAKBROOK TERRACE *et al.*, Defendants-Appellees.

First District (3rd Division) No. 79-697

Opinion filed June 4, 1980.

Charles T. Martin and John J. Verscaj, both of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellant.

Frank D. Mayer, Jr., and Michael F. Feagley, both of Chicago (Mayer, Brown & Platt, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Jack Dee, brought an action to determine his obligation to guarantee the indebtedness of his brother, Harold H. Dee, under a letter of credit written on Harold's account by the defendant, Bank of Oakbrook Terrace, to one of Harold's business suppliers. The bank filed a counterclaim for $9,745.60 which it had advanced to the supplier when the supplier presented a draft upon Harold's account. Both parties submitted affidavits and moved for summary judgment. The circuit court denied Jack's motion but granted the bank's. We reverse because a genuine issue of material fact exists.

On March 15, 1974, Jack Dee signed a printed form guaranty in favor of the bank to enable Harold to obtain credit. It expressly provided that Jack was guaranteeing payment of:

"* * * any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor [Harold] to said bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced * * *."

The guaranty also requested "* * * said Bank to extend from time to time to said Debtor such credit as said Bank may deem proper." The guaranty was limited to a maximum of $25,000, and was to remain in effect until the bank received written notice of termination. Once terminated, Jack would still be liable for any indebtedness incurred by Harold prior to termination.

The bank loaned Harold $25,000 on March 16, 1974. Additional credit was extended later, and Harold periodically made payments on his loans. On September 20, 1974, the bank issued a $10,000 irrevocable letter of credit on Harold's account to his supplier. On December 23, 1974, the letter of credit was increased to $15,000 and extended until March 20, 1976. The bank granted Harold a 90-day extension on the letter of credit on January 13, 1976, and, after Harold paid the bank $656.25 in interest on March 19, 1976, granted still another extension, this time for 30 days.

Jack Dee notified the bank by letter on May 8, 1976, that he would no longer be responsible for future obligations incurred by Harold. The bank had received Jack's letter when, on June 14, 1976, the supplier presented a draft of $9,745.60 upon Harold's letter of credit, and the bank honored the draft. On September 23, 1976, the bank wrote Jack, informing him of the amount of Harold's outstanding indebtedness as of June 14, 1976, and that it would no longer advance money to Harold without further affirmations of the guaranty by Jack, but that the guaranty covered Harold's outstanding debt. On November 11, 1976, Harold was adjudged bankrupt on a voluntary petition.

The parties submitted affidavits which gave conflicting versions of

events surrounding the execution of the guaranty and the issuance of the letter of credit. Jack Dee stated that the guaranty was executed solely to obtain the loan of $25,000, a one-time loan that would give Harold time to sell some real estate. He knew nothing about the letter of credit until Harold told him in May 1976 of his imminent bankruptcy. Harold Dee agreed that Jack did not know about Harold's later business transactions that involved the letter of credit. The chairman of the bank's board stated that Jack executed the guaranty so that the bank would extend credit to Harold for use in meeting sizable orders from a major customer in his business. He also stated that the letter of credit was issued only after Jack orally agreed that the guaranty would cover the letter of credit. The chairman said that the bank extended and increased the letter of credit in December of 1974 because Jack requested it do so to prevent Harold from being thrown into bankruptcy. The bank was reluctant to make the additional loan, but did so after Jack assured it that his guaranty would cover the increased amounts. Similarly, the chairman said that the 90- and 30-day extensions were made only after Jack gave the bank oral assurance that his guaranty would cover them. The bank's president filed an affidavit in which he confirmed that the 90- and 30-day extensions were made after receiving Jack's oral assurances. The president also stated that Jack requested the 90-day extension. Jack Dee denied that he ever discussed the letters of credit with anyone from the bank and denied giving oral assurances to the bank that his guaranty would cover the letter of credit.

Summary judgment is proper only when the pleadings, exhibits, depositions and affidavits on file reveal that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 154, 397 N.E.2d 75, 77.

The meaning of a guaranty is a matter of law, to be determined by the court. Guaranty agreements are to be strictly construed in favor of the guarantor. (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 437, 252 N.E.2d 734, 739.) This is especially true where, as is the case here, the guaranty is on a printed form supplied by the party to whom the guaranty runs, and where the guarantor is a volunteer receiving no compensation. (*Kesner v. Faroll* (1932), 268 Ill. App. 531, 540.) The agreement is to be construed to give effect to the intentions of the parties. (*Scovill Manufacturing Co. v. Cassidy* (1916), 275 Ill. 462, 474, 114 N.E. 181, 186.) But where there is a written contract in evidence, the intentions of the parties must be determined from its language alone, not from what the parties thought. (*Saddler v. National Bank of Bloomington* (1949), 403 Ill. 218, 228, 85 N.E.2d 733.) Where the language of the contract is clear and unambiguous, extrinsic facts are not

to be considered. (*Katz v. Diabetes Association* (1975), 31 Ill. App. 3d 240, 243, 333 N.E.2d 293.) Only where the guaranty agreement is ambiguous or where there is a question of the parties' intention may the subsequent acts of the parties be used as evidence of their intentions. *Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 299-300, 201 N.E.2d 127, 132.

The language of this guaranty agreement, set forth on a printed form supplied by the bank, is ambiguous because of internal inconsistencies. On the one hand, the guaranty purports to extend to "any and all indebtedness." On the other hand, it directs the bank to extend from time to time such credit as the bank may deem proper to Harold, the debtor. This direction, coupled with the bank's obligation to act in good faith (Ill. Rev. Stat. 1977, ch. 26, par. 1—203), limited the scope of the guaranty. Some loans could not reasonably be deemed proper by the bank and so would be outside the scope of the guaranty; consequently the guaranty, notwithstanding its wording may not extend to "any and all indebtedness."

We do not mean to suggest that this loan was improper, but Jack apparently relied on the bank to limit lending to his brother so that, in case the latter's financial position deteriorated to the point where additional loans were required to avoid bankruptcy, Jack would have a chance to cut his losses immediately by terminating the guaranty before the brother's position, and his, became untenable. Construing the guaranty agreement strictly and in favor of the guarantor leads to differing conclusions as to its coverage.

The scope of the guaranty is therefore unclear. For that reason we believe that the parties' subsequent conduct was material to a proper construction of it, one that would give effect to their intentions. The affidavits disclose a dispute over that conduct. The bank claims that it was asked by Jack to extend additional credit in December 1974 to keep Harold from being thrown into bankruptcy. It admits that it had reservations about the further extension of credit to Harold at that time. The bank's chairman stated in his affidavit that on or shortly before December 23, 1974, he was "reluctant" to extend additional credit to Harold. Jack does not dispute that Harold had financial problems, but denies either requesting the extension of credit or knowing or being told anything about Harold's business arrangements. He claims that the extension of credit was not contemplated at the time of the guaranty agreement and was not covered by it.

The anomaly in this case is that each of the parties on appeal relies on the position expressed in the other's affidavits. Jack argues that the bank's affidavits show that it sought assurances from him for the extensions of credit and relied upon those assurances, thus disclosing the bank's feeling

that its loans were not "proper" and therefore not covered by the guaranty. Yet, Jack denies that the conversations recorded in the affidavits executed by the bank's officers ever took place. The bank submitted the affidavits to support its motion for summary judgment, but now argues that they should be disregarded. Because summary judgment is such a drastic remedy, it should not be employed unless the right of the moving party is free from doubt. (*Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 61, 324 N.E.2d 444, 450.) In view of the wording of the guaranty and the unusual posture the parties have taken with respect to the affidavits of the other, neither party's case is free from doubt. The wiser judicial policy is to permit the resolution of the dispute by trial rather than by summary judgment, so that through cross-examination of witnesses the facts can be fully explored. *Wegener v. Anna* (1973), 11 Ill. App. 3d 316, 320, 296 N.E.2d 589, 591.

Judgment reversed and remanded.

McGILLICUDDY, P. J., and McNAMARA, J., concur.