CITY NATIONAL BANK OF MURPHYSBORO, Plaintiff-Appellee and Cross-Appellant, v. WILLARD DEAN REIMAN, Defendant-Appellant and Cross-Appellee (Frank Stokes *et al.*, Defendants).

Fifth District No. 5—90—0812

Opinion filed October 19, 1992.

Donald E. Elmore, of Wolff & Jones, of Murphysboro, for appellant.

Edward J. Heller, of Reed, Heller & Mansfield, of Murphysboro, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Willard Dean Reiman, appeals from a judgment of the circuit court of Jackson County in the amount of $55,862.36 for plaintiff, City National Bank of Murphysboro, entered after a jury verdict for plaintiff in that amount. In this cause defendant raises the fol-

lowing contentions: (1) that the trial court improperly granted summary judgment on defendant's first affirmative defense, impairment of collateral; (2) that the trial court improperly granted summary judgment on defendant's third affirmative defense, demand for suit by surety pursuant to section 1 of "An Act to revise the law in relation to sureties" (the Act) (Ill. Rev. Stat. 1989, ch. 132, par. 1); (3) that the trial court improperly sustained objections to tendered testimony, exhibits, and offers of proof; (4) that the jury instructions contained errors and read as a whole failed to sufficiently instruct the jury and/or misled the jury; (5) that the submission of special interrogatories to the jury was error; (6) that the instruction of the jury prior to final argument was error; (7) that the trial court improperly responded to questions from the jury during deliberations; and (8) that the trial court's acceptance of special interrogatories which were not signed by all jurors was error. We affirm and remand.

This case arises from a loan guaranty agreement dated December 31, 1985, made between defendant, a voluntary guarantor, and plaintiff. The guaranty was to cover a loan made to Frank and Patricia Stokes and their company, Hoke Investment Company, for $133,000. A debtor-creditor relationship had existed for several years prior to 1985 between plaintiff and the Stokeses. In December 1985, the Stokeses had an outstanding indebtedness to plaintiff for $55,000.

The Stokeses operated three businesses, namely Hunker's Lounge, Frank's Cleaning Service, and a concession business. In December 1985, the property in which Hunker's Lounge was housed was owned by Hoke Investment Company. This property consisted of a two-story building with Hunker's Lounge and three other business fronts on the ground floor and at least three furnished apartments on the second floor. The Stokeses had possession of the entire premises in December 1985 under a purchase agreement entered into in 1981 in which the Stokeses agreed to purchase the stock of Hoke Investment Company for $127,000. In 1985, the Stokeses made arrangements with plaintiff to borrow an additional $78,000 to complete the purchase of Hoke and to consolidate their debts. The loan was evidenced by a $133,000 promissory note from the Stokeses to the bank. As security for the note, plaintiff took a security interest in, among other things, all equipment, fixtures, and furniture owned by Frank and Patricia Stokes and used in the operation of Hunker's Lounge, the cleaning business, the concession business, and the apartment rentals. A detailed list of the items was compiled and attached to the agreement. Plaintiff also took mortgages on the building housing Hunker's Lounge (hereinafter business property) and a residence and

farm owned by the Stokeses in a rural area near Murphysboro (hereinafter rural property). Plaintiff requested that the Stokeses obtain a guarantor for the debt, which is how defendant became involved.

Defendant was a friend of the Stokeses and at their request went to plaintiff on or about November 25, 1985. Defendant gave personal financial information to the president of the bank, Robert Streuter. On December 31, 1985, defendant received a call from Frank Stokes requesting that he go to the bank and sign papers. According to defendant, he signed the guaranty with the understanding that all property owned by the Stokeses was to stand as security for the debt. The security interest was granted by a written agreement, which included an extensive list of furniture, fixtures, equipment, and inventory owned by the Stokeses. As part of the loan transaction, Streuter appraised the business property at $165,000 and the rural property at $25,000. Streuter believed that the value of the equipment in Hunker's Lounge was around $17,000.

In December 1987, Streuter contacted defendant concerning problems the Stokeses were having meeting their loan obligations. At Streuter's request, defendant went to the bank where he was informed by Streuter that the Stokeses were in default under their loan obligation. Streuter requested that defendant cure the default. Defendant then told Streuter that if there were problems with the Stokeses' payments, the bank should proceed against the Stokeses on their security.

After this meeting, defendant sent plaintiff a revocation of guaranty giving notice that his guaranty, signed on December 31, 1985, was revoked effective upon receipt of notice. The revocation was dated and delivered on December 22, 1987. Accompanying the revocation was a request by defendant for "specific information regarding any acceptance of the loan guaranty agreement by City National Bank and any indebtedness or obligation of Hoke Investment Company *** and Frank Stokes and Patricia Stokes *** which City National Bank considers guaranted [sic] by the above referenced loan guaranty agreement." Defendant specifically asked for the following information: (1) the date of making of any obligations and indebtedness; (2) photocopies of all documentation relating to any indebtedness and obligations; (3) a statement with respect to the balance due as of December 22, 1987, under any indebtedness and obligation; and (4) a statement with respect to any default as to any indebtedness and obligations, and if there was a default, the nature and extent of such default. On December 24, 1987, three payments were applied on the loan account, presumably by the Stokeses. Plaintiff made no reply to

defendant's notice of revocation or defendant's request for information.

The next correspondence between the parties occurred on July 21, 1988, when plaintiff sent a letter to defendant by certified mail requesting and demanding that he pay past-due amounts due under the note for the months of May, June and July 1988. On July 26, 1988, defendant sent a response to plaintiff reminding plaintiff of his December 1987 revocation and request for specific information regarding any acceptance of the loan guaranty agreement by plaintiff and any obligations of Hoke Investment Company or the Stokeses. Defendant further stated in his letter that he took plaintiff's failure to respond as an acknowledgement that no extension of credit had been made under the loan guaranty agreement which he had revoked on December 22, 1987. Defendant also demanded that plaintiff sue the Stokeses immediately, claiming rights under section 1 of the Act (Ill. Rev. Stat. 1987, ch. 132, par. 1).

Plaintiff received a request from the Stokeses to purchase the release of the rural property from the mortgage. Plaintiff apparently had received an offer on the rural property. There was also a prospective purchaser for the business property. Neither sale was made. With no sale on either the mortgaged business property or the rural property, plaintiff filed a complaint for foreclosure on both pieces of property on November 10, 1988. On December 31, 1988, plaintiff received $20,000 from Pauline Leedy, who purchased the rural property. The rural property was subsequently released from the lien created by plaintiff's mortgage on the property. Plaintiff credited $5,835 of the proceeds of the sale to principal under their indebtedness, $5,506.08 to interest under the indebtedness through December 3, 1988, $6,941.37 to back taxes, and $1,717.55 for outstanding legal fees.

On January 10, 1989, judgment was rendered on the foreclosure and on the note against the Stokeses in the amount of $118,006.60. Plaintiff, as mortgagee, was placed in possession of the mortgaged business property, subject to the pending foreclosure action. Patricia Stokes testified that she turned over the keys to the business property in January 1989. Streuter was not sure when plaintiff received possession of personal property. He further stated that the bank had no policy for making regular inspections or inventory of the personal property covered by the security agreement and that no inventories had been made during the course of the loan. Mrs. Stokes opined that the personal property that was left was not worth carrying off. She testified that some of the property listed on the security agreements did not exist, some was worn out, and some was sold at flea markets.

She further testified that there was a fire in 1987 at the rural property. At the time of the fire there was insurance coverage on the residence, but plaintiff was not listed as an additional insured as required by the mortgage. $12,896.13 was paid by the insurance carrier to the Stokeses. The proceeds were not used to rebuild the residence. According to Mrs. Stokes, $6,000 of the insurance proceeds was used to make three regular payments on the note. Plaintiff received no other money from the insurance proceeds.

On June 16, 1989, plaintiff purchased the business property at the foreclosure sale for $80,000. Using the following formula, a deficiency of $42,862.13 remained:

> "a) Pursuant to Judgment January 10, 1989 $118,006.60
> b) Interest on Judgment to date of sale
> 157 days at $29.10/day 4,568.70
> c) Additional Expenses and Attorney Fees 1,124.30
> d) Less Funds Applied From Rents - 837.47
> TOTAL DUE DATE OF SALE $122,862.13
> Amount of Bid 80,000.00
> Amount of Deficiency 42,862.13."

The personal property was sold at a public sale at which time plaintiff purchased the personal property for $1,350.

Defendant was originally joined as a defendant under counts I and II but was later dismissed as an improperly joined party in both counts. Defendant answered count III of the complaint and raised the following three affirmative defenses: (1) that subsequent to the execution of the loan agreement, plaintiff unjustifiably impaired the collateral held for the underlying indebtedness of Hoke Investment Company, Frank Stokes and Patricia Stokes; (2) that defendant delivered a revocation of his guaranty to plaintiff on December 22, 1987, as well as a request for plaintiff to provide defendant with additional information, and that plaintiff in failing to provide the requested information acknowledged that there had been no acceptance of the guaranty or extension of credit thereunder; and (3) that plaintiff did not within a reasonable time and with due diligence commence suit and proceed with collection against Hoke Investment Company, Frank Stokes and Patricia Stokes, and defendant Willard Dean Reiman, and, therefore, defendant has been discharged from any obligation that may have existed under the above-referenced loan guaranty agreement pursuant to section 1 of the Act (Ill. Rev. Stat. 1987, ch. 132, par. 1).

Plaintiff filed a motion attacking defendant's answer and requested that defendant's three affirmative defenses be stricken, and defendant filed a response to the motion attacking his answer. The

matter was heard by the trial court, which entered an order denying plaintiff's motion attacking defendant's answer. Plaintiff subsequently filed its response to defendant's affirmative defenses. On September 21, 1990, plaintiff filed a motion for summary judgment, to which defendant filed a response. The trial court heard arguments on plaintiff's motion for summary judgment. The judge who heard these arguments was not the same judge who had heard plaintiff's motion attacking defendant's answer and request that defendant's three affirmative defenses be stricken. On October 2, 1990, the trial court entered an order denying plaintiff's request for summary judgment with regard to the issue of acceptance and reliance, and granting summary judgment in favor of plaintiff on the issues of impairment of collateral and due diligence, defendant's first and third affirmative defenses. The case then proceeded to trial on the remaining issues. Ultimately, the jury rendered a verdict for plaintiff in the amount of $55,862.36. Defendant filed a post-trial motion seeking a new trial, which was denied by the trial court. Defendant appeals this denial.

I

The first issue we are asked to consider is whether the trial court's entry of summary judgment on the affirmative defense of impairment of collateral was error. Defendant argues that impairment of collateral as alleged in his first affirmative defense is still a viable defense under the laws of our State, and that this difference was not obliterated by adoption of the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1989, ch. 26, par. 1—101 et seq.). Defendant further argues that it was error not to allow him to present his defense of impairment of collateral which would have included evidence of plaintiff failing to monitor collateral, failing to insist on insurance coverages which were required, and failing to service the loan in a reasonable manner for a bank by regularly checking on collateral. Finally, defendant argues that the case relied upon by the trial court in making its decision to grant plaintiff's motion for summary judgment on the impairment of collateral issue, Ishak v. Elgin National Bank (1977), 48 Ill. App. 3d 614, 363 N.E.2d 159, is distinguishable. Plaintiff responds that the trial court's order granting summary judgment was proper because the loan guaranty agreement is clear and unambiguous, and in it defendant waived diligence in collection and gave consent without notice to making settlements and compromises and taking and releasing collateral. Plaintiff further argues that the right of a guarantor to require a bank to use due diligence to collect from the principal may be waived and, if waived, the contract is conclusive on this issue.

Illinois courts have repeatedly emphasized that the purpose of summary judgment is not to try an issue of fact, but to determine whether a triable question of fact exists. (*Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 23, 462 N.E.2d 877, 881-82.) Summary judgment is a drastic remedy. It must be awarded with caution to avoid preempting a litigant's right to trial by jury or his right to fully present the factual basis of a case where a material fact is in dispute. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 998, 473 N.E.2d 531, 534.) In passing on a summary judgment motion, the trial court is therefore required to construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344.) Only if these materials establish that the movant's entitlement to summary judgment is clear and free from doubt may such a motion be granted. *Fremont Indemnity Co. v. Special Earth Equipment Corp.* (1985), 131 Ill. App. 3d 108, 112, 474 N.E.2d 926, 930.

In order to determine whether summary judgment was proper, we must consider the guaranty signed by defendant. Defendant signed a guaranty which was on a preprinted form with a few of the items typed in to allow for differences between such agreements. The guaranty signed by defendant provided in pertinent part:

"LOAN GUARANTY AGREEMENT

FOR VALUE RECEIVED and to enable Hoke Investment Company, formerly Cochran-Webster, Inc. A Delaware Corporation, having authority to transact business in the State of Illinois and Frank Stokes and Patricia Stokes of Murphysboro, Illinois, hereinafter designated as 'Debtor,' to obtain credit, from time to time, of City National Bank of Murphysboro, we hereby request said Bank to extend to said Debtor such credit as said Bank may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of

One Hundred Thirty Three Thousand and .00/100 ($133,000.00) Dollars, and we jointly and severally also agree to pay in addition thereto, all costs, expenses and reasonable at-

torney's fees at any time paid or incurred in endeavoring to collect said indebtedness, liabilities and obligations, and in and about enforcing this instrument.

All diligence in collection, and all presentment for payment, demand, protest, notice of protest and notice of non-payment, dishonor and default, and of the acceptance of this guaranty, and of any and all extensions of credit hereunder, are hereby expressly waived.

The granting of credit from time to time by said Bank to said Debtor in excess of the amount of this guaranty and without notice to the undersigned, is hereby authorized and shall in no way affect or impair this guaranty. We hereby subordinate any sums now or hereafter due us from said Debtor to the payment of any sums now or hereafter due you.

Authority and consent are hereby expressly given said Bank from time to time, and without any notice to the undersigned, to give and make such extensions, renewals, indulgences, settlements and compromises as it may deem proper with respect to any of the indebtedness, liabilities and obligations covered by this guaranty, including the taking or releasing of security and surrendering of documents."

■ The meaning of a guaranty is a matter of law to be determined by the trial court. Guaranty agreements must be strictly construed in favor of the guarantor. (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 437, 252 N.E.2d 734, 739.) This is especially true where, as here, the guaranty is on a printed form supplied by the party to whom the guaranty runs, and where, as here, the guarantor is receiving no compensation. (*Kesner v. Faroll* (1932), 268 Ill. App. 531, 540.) However, where the language of a contract is clear and unambiguous, extrinsic facts are not to be considered. *Katz v. Diabetes Association* (1975), 31 Ill. App. 3d 240, 243, 333 N.E.2d 293, 295.

In the instant case, plaintiff contends that the language in the contract specifically waived the defense of impairment of collateral and diligence in collection. Defendant argues he revoked his guaranty as of December 22, 1987, and at the same time made a specific request for information regarding the acceptance of the loan guaranty agreement by plaintiff and any indebtedness plaintiff considered guaranteed by defendant's guaranty, which request plaintiff ignored.

■ A continuing guaranty may be revoked at any time provided due notice is given. (*Panknin v. Inspiration Placers, Inc.* (1940), 307 Ill. App. 241, 29 N.E.2d 864 (abstract of opinion); *Mamerow v. Na-*

*tional Lead Co.* (1903), 206 Ill. 626, 69 N.E. 504.) When a guaranty is revoked, a guarantor's liability extends only to transactions occurring pursuant to the guaranty before notice of revocation. (206 Ill. at 635, 69 N.E. at 507.) However, a guarantor's revocation does not release him from liabilities incurred prior to the revocation. We agree with plaintiff that the language in the contract, quoted above, waived the defenses of impairment of collateral and diligence in collection. We also note that the loan in question was made, and the guarantor's liability incurred, prior to defendant's revocation.

■■■ Section 3—606 of the Code in force at the time, provided, in pertinent part:

> "(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> * * *
>
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." (Ill. Rev. Stat. 1989, ch. 26, par. 3—606(1)(b) (repealed by Pub. Act 87—582, §2, January 1, 1992).)

In its order granting summary judgment for plaintiff on the issue of impairment of collateral, the trial court found that the defense based on section 3—606(1)(b) of the Code did not lie as a matter of law and cited the case of *Ishak v. Elgin National Bank* (1977), 48 Ill. App. 3d 614, 363 N.E.2d 159. The trial court specifically stated:

> "i. 'Impairment of collateral' is created by the Uniform Commercial Code (Illinois Revised Statutes, ch. 26, par. 3—606(b). However, the statutory reference relates to negotiable instrument. *Ishak v. Elgin National Bank*, 48 Ill. App. 3d 614 (1977) Second District stated in a case with a separate guaranty such as is presented in the instant case,
>
>> Thus, the plaintiff will not be discharged from any liability arising under the guaranty by the Bank's failure to file a financing statement with the Secretary of State under Section 9—401(i)(c) because the guaranty is not a negotiable instrument and the Uniform Commercial Code is not applicable to it."

The trial court followed our colleagues on the Second District Appellate Court, who found that the impairment of collateral defense under section 3—606(i)(b) is unavailable to a guarantor executing a separate contract from the instrument. (*Ishak v. Elgin National Bank* (1977), 48 Ill. App. 3d 614, 363 N.E.2d 159.) We agree with *Ishak*; see also

*First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.* (10th Cir. 1987), 820 F.2d 1127.

In light of our conclusions concerning waiver by defendant and section 3—606, the trial court's entry of summary judgment in favor of plaintiff on defendant's first affirmative defense was proper.

## II

The next issue we are asked to address is whether the trial court's entry of summary judgment on the affirmative defense of demand for suit by surety pursuant to section 1 of the Act (Ill. Rev. Stat. 1989, ch. 132, par. 1) was error. Defendant contends that the trial court's determination as to this issue failed to consider that defendant had revoked his guaranty and any waiver or release contained in the document.

 Section 1 of the Act provides:

"§1. When any person is bound, in writing, as surety for another for the payment of money, or the performance of any other contract, apprehends that his principal is likely to become insolvent or to remove himself from the state, without discharging the contract, if a right of action has accrued on the contract, he may, in writing, require the creditor to sue forthwith upon the same; and unless such creditor, within a reasonable time and with due diligence, commences an action thereon, and prosecutes the same to final judgment and proceeds with the enforcement thereof, the surety shall be discharged; but such discharge shall not in any case affect the rights of the creditor against the principal debtor." (Ill. Rev. Stat. 1989, ch. 132, par. 1.)

This law protecting sureties was first passed in 1874. The statute was enacted to compel diligence by a creditor to make certain that a surety is protected against loss. (*Wurster v. Albrecht* (1925), 237 Ill. App. 284, 287.) This protection may be waived by the language in a contract of guaranty. (*Continental & Commercial National Bank v. Cobb* (1st Cir. 1912), 200 F. 511.) In *Continental & Commercial National Bank*, the following language was found to supersede the statute:

"It is also stipulated that said bank may, at any time, in such manner and upon such terms as it may see fit, extend the time and alter the manner for the payment of said indebtedness or any part thereof of said Albert W. Cobb and Lawrence, without notice to John C. Cobb, he hereby agreeing beforehand that no such alteration of time or terms of credit shall in any manner affect the liability of John C. Cobb hereunder." (200 F. at 516.)

In finding that the language of the contract took precedence over section 1 of the Act, the *Continental & Commercial National Bank* court stated:

> "Now, the claim to apply the Illinois statute to this agreement, if successful, would cut this part up by the roots; and it must be conceded that the statute yields to the contract as it exists, so that, by virtue of the plain letter of the contract, the statute cannot be used to require the plaintiff to bring a suit at any specific time in direct contravention of the obligation which itself provides that the plaintiff might give the principal obligor any time it saw fit, and might also renew this grace or favor from time to time." (200 F. at 516.)

In light of the guarantee language quoted above, we conclude that defendant waived this defense. Summary judgment for plaintiff therefore was proper.

## III

■ Defendant raises a number of issues along with his affirmative defenses. He claims the trial court committed error in sustaining plaintiff's objections to defendant's tendered testimony and exhibits concerning the value of real estate, the monitoring of the loan in question, plaintiff's failure to check the maintenance of the secured property, and the failure to require proper maintenance of that property and insurance. Plaintiff's objections to these elements of testimony were generally sustained or resulted in severely restricted proof by defendant. Plaintiff argues, and we agree, that in light of the trial court's proper disposition of defendant's first and third affirmative defenses, the trial court's rulings on the relevancy objections by plaintiff were proper.

■ Defendant also claims error by the trial court on numerous instructions, both in giving instructions tendered by plaintiff and refusing those tendered by defendant. Defendant claims plaintiff's instructions individually, and read as a whole, misstated the law and gave undue emphasis to the factual matters at issue in plaintiff's case. After review of the instructions, we determine that the instructions as a whole gave proper guidance to the jury, did not mislead the trier of fact, and accurately stated the law and that those terms defined, such as "guarantor," were defined in such a manner as to help the jury and not to mislead it.

In particular, plaintiff's instruction No. 11, construing a written guaranty agreement, reads as follows:

"A written guaranty agreement is a contract. Where there is a written contract in evidence, the intentions of the parties must be determined from its language alone, not from what the parties thought."

This was a non-Illinois Pattern Jury Instructions (IPI) instruction based on *Dee v. Bank of Oakbrook Terrace* (1980), 84 Ill. App. 3d 1022, 406 N.E.2d 195. Defendant argues that this non-IPI instruction confused the jury while plaintiff claims it accurately stated the law in the *Dee* case. The court in *Dee* summarized the applicable law as follows:

"The meaning of a guaranty is a matter of law, to be determined by the court. Guaranty agreements are to be strictly construed in favor of the guarantor. (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 437, 252 N.E.2d 734, 739.) This is especially true where, as is the case here, the guaranty is on a printed form supplied by the party to whom the guaranty runs, and where the guarantor is a volunteer receiving no compensation. (*Kesner v. Faroll* (1932), 268 Ill. App. 531, 540.) The agreement is to be construed to give effect to the intentions of the parties. (*Scovill Manufacturing Co. v. Cassidy* (1916), 275 Ill. 462, 474, 114 N.E. 181, 186.) But where there is a written contract in evidence, the intentions of the parties must be determined from its language alone, not from what the parties thought. (*Saddler v. National Bank of Bloomington* (1949), 403 Ill. 218, 228, 85 N.E.2d 733.) Where the language of the contract is clear and unambiguous, extrinsic facts are not to be considered. (*Katz v. Diabetes Association* (1975), 31 Ill. App. 3d 240, 243, 333 N.E.2d 293.) Only where the guaranty agreement is ambiguous or where there is a question of the parties' intention may the subsequent acts of the parties be used as evidence of their intentions. *Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 299-300, 201 N.E.2d 127, 132." (*Dee*, 84 Ill. App. 3d at 1024-25, 406 N.E.2d at 197.)

(See also *United States v. Crispen* (N.D. Ill. 1985), 622 F. Supp. 75.) We conclude that the matters of law determined by the trial court relating to the guaranty agreement in this cause were accurately determined by that court and appropriately reflected in the instructions given to the jury. We also determine that those instructions tendered by defendant, in light of the trial court's ruling on its affirmative defenses and its construction of the guaranty agreement, were properly refused.

██ Defendant further claims that the special interrogatories submitted by the trial court also constituted error since the court accepted the return on the special interrogatories without their being signed by the jury. Section 2—1108 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1108) indicates that special interrogatories are to be treated as instructions. Given this general directive, we do not conclude the trial court committed reversible error by not requiring jury signatures on the return on the special interrogatories. We also note that the answers to those special interrogatories were consistent with the general verdict rendered by the jury and properly framed issues for the jury, *i.e.*, whether plaintiff relied on the guaranty agreement, what amount was due under the guaranty agreement, and whether defendant executed the guaranty agreement to induce plaintiff to loan the funds, to which an answer in conflict with the general verdict would have controlled the general verdict.

██ Defendant further alleges error in the court's handling of two written questions from the jury. The first question was: "Please define subordinate. A verb," to which the trial judge returned a note stating: "You have received all the instructions that you are going to receive. I'm sorry that I cannot further define terms. Please retain this note for the file." In a second note, the jury asked: "We have forms to fill out. RE: Proposition Number one. Made a loan. Three, Plaintiff relied on loan guaranty. Five, amount due. Do we need to fill out forms on Prop. two and four. RE: Inducing the Loan and the Default." The trial court's answer on the note was: "You need to fill out one verdict form and three additional forms which pose specific questions. Those are the only forms which need to be completed. Save this note for the file." The court did not notify the attorneys of these communications and its answers prior to accepting the verdict and discharging the jury. Defendant claims error from this, in effect that he was prejudiced by this denial of an opportunity to comment upon the jury's questions and help formulate an answer. Plaintiff responds that there was no prejudice shown and that this is required before setting aside a jury verdict, citing *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387.

Upon consideration of this entire record, we agree with plaintiff that there was no prejudice shown as is required by *People ex rel. Walker.* By this ruling we do not endorse or encourage this method of handling inquiries from juries, since the preferable practice is to attempt to contact the attorneys before responding. (*Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344; see also R. Hunter, Trial Handbook for Illinois Lawyers (Civil) §§65.14, 65.10 (6th

ed. 1989).) If responding to the jurors' inquiries without contacting the counsel in this case was error, it was harmless error which resulted in no prejudice to either party.

▪ A unique aspect of this case was also a point of error alleged by defendant. In this cause the trial court instructed the jury before counsel's closing argument, stating:

"Gentlemen, it is my intention to do something somewhat unusual, and that is to instruct the jury before the closing arguments so that they know what the law is during the course of the closing arguments. Then I will allow you to proceed to closing arguments.

* * *

MR. ELMORE [defense counsel]: *** On the record I would like to object to the presenting of the instructions prior to the arguments, because I believe the instructions are the directions to the jury allowing the argument after the reading of instructions and it puts undue emphasis on the arguments, and it takes away the emphasis that is due and owing to the instructions.

THE COURT: The alternative to that is that the jury knows what the law is and when they hear the instructions or hear the arguments they can apply it in a more meaningful fashion. That's why I decided to do it that way. Your objection is noted, Mr. Elmore."

Defendant claims that this action by the trial court was in violation of section 2—1107 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1107), and plaintiff concedes that the sequence of instruction of this jury was not in accord with section 2—1107. Plaintiff also argues, however, that defendant must show prejudice by this action (*Allen v. Dorris* (1974), 16 Ill. App. 3d 980, 307 N.E.2d 225) and argues that no prejudice has been shown. We agree with the parties that it was in contravention of section 2—1107. We also agree with plaintiff that the standard for review of this action is whether the complaining party has been prejudiced. We find no prejudice to defendant in the manner in which the court instructed the jury. Based on the above findings, the trial court's denial of defendant's post-trial motion was proper.

▪ Plaintiff also appears before us as cross-appellant requesting this court to remand this cause for a determination of attorney fees for post-trial and appeal services. Considering our disposition of the issues in this cause, we agree that remand would be appropriate so

the trial court may determine this issue. *American Savings Association v. Conrath* (1984), 123 Ill. App. 3d 140, 462 N.E.2d 849.

In light of the disposition of the issues in this cause, as noted above, the judgment of the circuit court of Jackson County is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed and remanded.

HARRISON and CHAPMAN, JJ., concur.